[S. F. No. 8630. In Bank.—December 8, 1919.]

WILLETT & BURR (a Corporation), Appellant, v.
D. ALPERT et al., Defendants; S. GORDON, Respondent.

[S. F. No. 8631. In Bank.—December 8, 1919.]

WILLETT & BURR (a Corporation), Appellant, v.
D. ALPERT et al., Defendants; D. ALPERT, Respond-
ent.

[1] ATTACHMENT—SALE OF GOODS—BREACH OF CONTRACT—ACTION FOR
DAMAGES.—In an action by a vendee upon a contract for the sale
of personal property against the vendors to recover damages for
the failure of the latter to deliver the full quantity of property
claimed to be called for by the contract, a delivery of a part
of the quantity having been made and the vendee having paid the
full purchase price, the plaintiff is not entitled to a writ of attach-
ment under subdivision 1 of section 538 of the Code of Civil Pro-
cedure, since the action is not upon a contract, express or implied,
for the direct payment of money.

[2] ID.—DISCHARGE OF ATTACHMENT AS TO ONE DEFENDANT—APPEAL—
MOTION TO DISCHARGE AS TO OTHER DEFENDANTS—JURISDICTION.—
Jurisdiction to hear and determine a motion to discharge an at-
tachment as to one of several defendants is not lost by reason of
the fact that the plaintiff had taken an appeal from an order dis-
charging the attachment as to one of the other defendants.

[3] ID.—MOTION TO DISCHARGE ATTACHMENT—RIGHT OF EACH DEFEND-
ANT.—Each defendant can move to discharge an attachment which,
as to him, was irregularly or improperly issued.

[4] ID.—AFFIDAVIT ACCOMPANYING MOTION—SUFFICIENCY.—A motion
to dissolve an attachment need not be accompanied by an affidavit
of merits, and an affidavit setting forth that defendant was a
resident of the state and, that the money attached belonged to him,
was sufficient.

[5] ID.—GENERAL APPEARANCE UNNECESSARY.—Under the requirements
of section 556 of the Code of Civil Procedure, a general appearance
is not necessary before a defendant can make a motion to dissolve
an attachment.

[6] ID.—NOTICE OF MOTION TO DISSOLVE—SUFFICIENCY.—A notice of
motion to dissolve an attachment which states that the motion will
be made on the ground that the attachment was improperly issued,
in that the alleged cause of action set forth in the complaint and
in the affidavit in support of the attachment is insufficient to bring
the alleged claim sued upon within the provisions of sections 537
and 538 of the Code of Civil Procedure, and, that the writ was
irregularly issued in that the claim sued upon was not for an in-
debtedness upon a contract, express or implied, for the direct pay-
ment of money, is a sufficient notice of motion.

[7] ID.—ORDER DISCHARGING ATTACHMENT—RECITAL OF GROUNDS IN
CONJUNCTIVE FORM—APPEAL—DENIAL OF SINGLE GROUND—AF-
FIRMANCE OF ORDER.—An order discharging an attachment which
recited that the writ was irregularly *and* improperly issued will
not be disturbed on appeal, even though it was not denied that
the writ was improperly issued, but only contended by appellant
that it was not irregularly issued.

[8] ID.—TIME OF FILING NOTICE OF MOTION—OBJECTION—APPEAL.—
Objection that a notice of motion to dissolve an attachment was
not filed in proper time should be made in the trial court in the
first instance, and if not so made, the point will not be considered
on appeal.

APPEALS from orders of the Superior Court of the City
and County of San Francisco, discharging writs of at-
tachment. George A. Sturtevant, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. H. Countryman for Appellant in Nos. 8630 and 8631.

A. S. Newburgh for Respondent in No. 8630.

F. W. Nightingill for Respondent in No. 8631.

LAWLOR, J.—Under stipulation two separate appeals from two orders, one discharging an attachment as to the defendant Alpert, the other discharging the writ in the same action as to defendant Gordon, are considered together.

The plaintiff corporation brought an action to recover damages against the defendants, Alpert, Brownstone, and Gordon, in the total sum of $6,562.50. At the time of filing the complaint the plaintiff also filed an undertaking on attachment. The affidavit is in the usual form and alleges that the plaintiff is a corporation, and that each of the defendants is indebted to the plaintiff in the sum of $6,562.50 upon an express contract for the direct payment of money. A writ of attachment was issued in regular form and a garnishment was served on the Bank of Italy in San Francisco, covering the funds of Alpert and Gordon. On September 6, 1917, defendant Alpert served and filed a motion to discharge the writ of attachment, in support of which he filed an affidavit. The motion was made on the grounds: First. That the complaint does not state facts sufficient to constitute a cause of action. Second. That the writ of attachment was improperly issued in that the alleged cause of action does not come within the provisions of sections 537 and 538 of the Code of Civil Procedure. Third. That the writ of attachment was irregularly issued in that the claim sued upon "was not an indebtedness due from defendant to plaintiff upon a contract, express or implied, for the direct payment of money, but that on the contrary said alleged claim set forth in plaintiff's complaint herein is for an alleged breach of contract upon a claim for unliquidated damages."

On September 11, 1917, the motion of defendant Alpert, after hearing, at which counsel for defendant Gordon appeared as *amicus curiae* and argued in favor of the motion, was granted, and the court made an order discharging the writ as to all of the defendants, the name D. Alpert, however, appearing in parentheses following the word "defendants." Counsel for defendant Gordon at this time reserved the right to make a separate motion to discharge the writ as to defendant Gordon. On the following day, September 12, 1917, the plaintiff perfected its appeal from the order so made. Thereafter, defendant Gordon appeared specially for the purpose of making a motion to discharge the writ,

and on September 18, 1917, moved to have the attachment discharged on the grounds: "1st. That said writ of attachment was irregularly and improperly issued." 2d. That the writ was not issued in accordance with the provisions of sections 537 and 538 of the Code of Civil Procedure. 3d. That the writ was not issued in an action based upon a contract, express or implied, for the direct payment of money where the contract is made or is payable in this state. 4th. That the cause of action was not upon a contract, express or implied, against the defendant, or defendants, not residing in this state, but, on the contrary, against the defendant or defendants residing in the state and residents thereof. 5th. That the action is for damages for alleged breach of contract and that the damages are unliquidated "and cannot be ascertained with reasonable certainty from an inspection of the complaint, or the affidavit upon which said alleged illegal attachment is based. 6th. That the affidavit on attachment is insufficient for any and all the grounds heretofore shown and alleged."

Plaintiff made preliminary objections to the hearing of the motion of defendant Gordon on the ground that the notice of motion had not been filed within the time allowed by law, and on the further ground that the trial court had no jurisdiction to hear the motion "for the reason that the attachment had been discharged, and an appeal taken and perfected, and the superior court had no further jurisdiction in the matter pending the determination of said appeal, and on the further ground that defendant Gordon had not filed an affidavit of merits, and on the further ground that the notice of motion of defendant Gordon was insufficient as he gave and made only a special appearance and not a general appearance, and on the further ground that the notice of motion of defendant Gordon was stated in the conjunctive form, and that all of the conjunctive grounds must exist or the motion must be denied." On October 10, 1917, the motion was granted and an order made discharging the attachment as to the defendant Gordon. From this order plaintiff has also taken an appeal.

The essential facts appearing in the complaint are these: The Pacific Coast Redwood Company, on July 12, 1916, for five thousand dollars, sold to one Baker "two locomotives, two hoists, together with all railroad iron, cars, railroad

equipment and all machinery and iron in 'and about the mill of the party of the first part, now situate on land owned by the party of the first part, along and near the Navarro River, Mendocino County." This contract was, on August 4, 1916, assigned by Baker to Alpert, defendant and respondent herein. Alpert shortly thereafter entered into contracts with Dillingham and Linn and others for the delivery of the rails at Albion "except rails that were buried," undertaking to pay them a certain price for their services and assuming other obligations. On January 28, 1917, Alpert, with Brownstone and Gordon, his codefendants, sold to Lerch and Dimmick for eight thousand dollars, "all that certain personal property located in and upon the lands of the Pacific Coast Redwood Company at Navarro River . . . consisting of one locomotive, two donkey-engines, eleven flue-boilers, also all pipe and other miscellaneous equipment and scrap iron, also at least six hundred tons rails and fittings and in addition to the foregoing approximately one hundred tons rails now at Albion," the buyers agreeing to assume the obligations of the contracts with Dillingham and Linn and others for the delivery of the material at Albion. On April 30, 1917, after four thousand dollars of the eight thousand dollars purchase price had been paid to Alpert and his associates, the plaintiff corporation purchased from Lerch and Dimmick, for six thousand dollars, the material they bought from the defendants, assumed the payment to Alpert and his associates of four thousand dollars, the balance due on the eight thousand dollars purchase price, and assumed the obligations of Lerch and Dimmick under the contracts for hauling, releasing them from all warranties except as to the payment of the first four thousand dollars, and as to the genuineness of signatures, in consideration of which Lerch and Dimmick assigned to the plaintiff corporation their interest in the contract, excepting from the operation of the assignment one hundred tons of rails at Albion. Subsequently the plaintiff corporation made the final payment of four thousand dollars to Alpert, Brownstone, and Gordon.

It is alleged in the complaint that the defendant delivered only 425 tons instead of six hundred tons of rails. It is further alleged that plaintiff, by reason of the failure of the defendants to deliver the balance of 175 tons of rails,

has been damaged in the sum of $6,562.50. The affidavit of the plaintiff's president for attachment contains averments that the defendants are indebted to the plaintiff in the sum of $6,562.50, "over and above all legal setoffs or counterclaims upon an express contract for the direct payment of money, to wit, a written contract to sell and deliver certain personal property, to wit, 600 tons of rails, the price of which has been fully paid to defendants but defendants only delivered 425 tons of said rails, more or less, to the damage of plaintiff in said sum of $6,562.50."

Two questions are presented by the appeals. First: Is the case one in which the character of the action is such that attachment will lie under subdivision 1 of section 537 and subdivision 1 of section 538 of the Code of Civil Procedure, and, second, were the defendants entitled to be heard on their respective motions to dissolve the attachment?

1. As to the character of the action, it is simply one brought by the vendee in a contract for the sale of personalty against the vendors to recover damages for a failure of the vendors to deliver the full quantity of property claimed to be called for by the contract, a delivery of a part of the quantity having been made, and the vendee having paid the full purchase price. There was no entire failure of consideration so as to entitle the vendee to recover the purchase price paid on that ground, nor was there any attempt to rescind for a partial failure so that the vendee could recover the purchase price paid on that ground, and the action in fact is not brought for a recovery of the purchase price, or any part thereof, but is strictly for damages for a breach of contract.

There is much discussion in the briefs as to whether the damages sought are liquidated or unliquidated, the appellant claiming that they are liquidated, and that because of that fact an attachment will lie. In support of this are cited *Donnelly* v. *Strueven*, 63 Cal. 182; *Dunn* v. *Mackey*, 80 Cal. 104, [22 Pac. 64]; *De Leonis* v. *Etchepare*, 120 Cal. 407; [52 Pac. 718]; *Hale Bros.* v. *Milliken*, 142 Cal. 134, [75 Pac. 653]; *Hamburger* v. *Halperm*, 28 Cal. App. 317, [152 Pac. 61]). But whether the damages sought be liquidated or unliquidated is not determinative. The determinative question is whether the action is within the statutory requirement that it be "upon a contract, express or implied,

for the direct payment of money," and in all of the cases just mentioned it will be found upon examination that there was either an express contract for the direct payment of money, or else a similar contract implied in fact or as a matter of law in the manner hereinafter mentioned. In not one of them was the action one for the recovery of damages for the breach of a contract other than for the direct payment of money.

The statute is explicit. It permits of an attachment against residents of the state (and the defendants in the present case are such residents) only, as we have said, "In an action upon a contract, express or implied, for the direct payment of money . . . " (Code Civ. Proc., subd. 1, sec. 537). It is obvious that the contract in this case, so far as the defendants are concerned, is not an *express* contract for the direct payment of money. The contract was not one by which, according to its terms, the defendants were to pay money. They were to deliver certain personal property, including a certain quantity of rails, and the action is one for damages for their alleged failure to make a complete delivery.

If an attachment will lie, it must be because there was an *implied* contract on the part of the defendants to pay money, to wit, the value of the rails contracted for but not delivered. The position of appellant's counsel is apparently that there is such an implied contract in this case. He states his position thus:

"If plaintiff had sued under a common count that it had bought and paid for 175 tons of rail, that the rail had not been delivered, that the rail was of the value of $6,562.50, the complaint would have stated a cause of action."

Now, it is true that, where a common count will lie, the law implies, as a fiction which cannot be controverted, a promise or contract to pay the amount recoverable in such an action, and that some of our decisions go so far as to sustain the issuing of an attachment in such a case upon the strength of the promise or contract so implied, even though there was in fact no such promise or contract. But, on the other hand, no such promise or contract will be implied unless a common count will lie. The implication is created solely to sustain the common count. It results that if a common count will not lie, no promise will be implied

by law unless there was one in fact, which is not the case here. The plaintiff's right to an attachment in the present case must, therefore, depend upon whether or not it could have brought the present action in the form of a common count. Plaintiff's counsel in the statement just quoted, assumes that it could, but the truth is that it could not, and this is determinative of the plaintiff's right to an attachment.

The action, as we have said, is one to recover damages for a failure on the part of the defendants to execute completely their contract to deliver, along with other things, a certain quantity of rails, and it is well-nigh elementary that a common count will not lie to recover damages for the breach of an unexecuted contract where the obligation breached is something other than the payment of money. The rule is thus stated in 5 Corpus Juris., pages 1386–1388, with the citation of a large number of authorities (the italics are ours) :

"3. Existence of Express Contract as Affecting Right to Maintain General *Assumpsit* on Implied Contract.

" (a) General Rule. It is a well-settled rule that when an express simple contract is open and *unexecuted,* and plaintiff proceeds for a breach of it, he must declare specially. *Indebitatus assumpsit* will not lie. . . .

" (b) Limitations and Exceptions to Rule—(1) Where Contract Has Been Fully Performed by Plaintiff.

" (a) Defendant's Obligation to be Settled by Payment of Money. Where an express contract, not under seal, has been fully performed on plaintiff's part, *and nothing remains to be done under it but the payment of money by defendant,* which is nothing more than the law would imply against him, plaintiff may declare specially on the original contract, or generally in *indebitatus assumpsit* at his election. . . .

" (b) Defendant's Obligation to be Settled Otherwise Than by Payment of Money. *If the agreement is to be carried out by defendant in some way other than by the payment of money, the general rule is that it must be declared on specially. . . .* "

The rule so stated is the rule in this state. It is expressed in almost identical language in *Castagnino* v. *Balletta,* 82 Cal. 250, at page 257, [23 Pac. 127]. To the same effect are *O'Connor* v. *Dingley,* 26 Cal. 11; *Barrere* v. *Somps,* 113 Cal.

97, 101, [45 Pac. 177, 572]; *Roche* v. *Baldwin*, 135 Cal. 522, 525, [65 Pac. 459, 67 Pac. 903].

The rule is enforced so strictly that a common count will not lie, not merely where the defendant's obligation is, as in the present case, to deliver something wholly different from money, but where it differs as slightly from an obligation to pay money as an obligation to deliver a promissory note in a certain amount. The case of *O'Connor* v. *Dingley* just mentioned, was of just that character. The plaintiff and the defendant had entered into a contract whereby the plaintiff was to construct a building for the defendant and the latter was to pay for it by his note. The plaintiff constructed the building and the defendant refused to give his note, whereupon the plaintiff brought an action for the amount of the note upon a common count, and brought the action before the time at which the note, if given, would have become due, and, therefore, at a time when the defendant's obligation was still one to give a note and not to pay money. The plaintiff recovered judgment in the lower court, and upon appeal this was reversed on the ground that a common count would not lie in such a case, and that the action had to be upon the special contract. The court said:

"The conclusion of law found by the court would have been upheld under the rules of pleading at common law (though not, in our opinion, by the rules established by our Practice Act), if the part of the contract to be performed by the appellant had consisted merely of the payment of money. But he did not promise to pay in money at the time of the completion of the work. He undertook to execute his note, as specified in the contract, and the ground of the action against him was his failure to execute the note according to the contract, and not his liability for the payment of money upon the completion of the work. It was held in *Musser* v. *Price*, 4 East, 147, which was a case in *indebitatus assumpsit* to recover the price of goods sold and delivered, to be paid for in three months by a bill of two months, that the action would not lie in that form, that the proper ground of the action was the nonperformance of the agreement to pay in a bill of two months, and that the contract was broken by his not giving the bill. (See *Hoskins* v. *Duperoy*, 9 East, 498; *Dutton* v. *Solomson*, 3 Bos. & P. 582;

*Brooks* v. *White,* 1 Bos. & P. N. R. 330; *Ward* v. *Whitney,* 8 N. Y. 442; *Lutz* v. *Ely,* 3 E. D. Smith (N. Y.), 621; *Hanna* v. *Mills,* 21 Wend. (N. Y.) 90, [34 Am. Dec. 216].) In the last case Mr. Chief Justice Bronson says: 'When goods are sold to be paid for by a note or bill payable at a future day, and the note or bill is not given, the vendor cannot maintain *assumpsit* on the general count for goods sold and delivered, until the credit has expired; but he can sue immediately for a breach of the special agreement.' The respondent was entitled to sue at the time he commenced this action, but he should have sued specially for the breach in failing to execute the note according to the contract.''

On the question of whether a common count will lie, no distinction is possible between this case of *O'Connor* v. *Dingley* and the present.

It may be well to point out the distinction between the present and such cases as *S. C. V. Peat Fuel Co.* v. *Tuck,* 53 Cal. 304, cited by appellant, where, upon a failure of consideration, or a breach of contract followed by rescission, the plaintiff sues to recover, not damages, but the money he has paid under the contract. Such an action proceeds upon the theory that the defendant has received money which should be returned by him to the plaintiff and which, therefore, the law implies a promise on his part to return, and the action for its recovery may, therefore, take the form of *indebitatus assumpsit.* But where, as in the present case, there is neither an entire failure of consideration nor a rescission of the contract so as to entitle the vendee to recover back his money, with the result that he is limited to his remedy of damages, or where there has been an entire failure of consideration and the vendee yet elects not to recover his money, but to recover damages, the action does not proceed upon any theory of the defendant having received money which he should return to plaintiff and which the law can, therefore, imply a promise on his part to return, and so *indebitatus assumpsit* will not lie. If this distinction between actions for the recovery of money paid because of failure of consideration or of rescission resulting from a breach of contract, and actions for damages for a breach of contract be not sound, it would follow that *indebitatus assumpsit* would lie in every case of a breach of contract. Such is not the law.

[1] To recapitulate, it is plain in the present case that there is no express contract for the direct payment of money; it is also plain that there is no implied contract unless the law creates the fiction of one for the purpose of permitting an action upon a common count; and, finally, it is a well-settled rule that an action upon a common count will not be permitted in such a case as this, where there is an express contract to do something else than pay money, and damages are sought because of the failure of the defendant to do that something else. It follows that the present action is not one in which the statute authorizes the issuance of an attachment. To hold otherwise would be simply to wipe out the statute and permit an attachment in every action for damages for a breach of contract, regardless of whether or not the contract be one for the direct payment of money.

2. Under plaintiff's second contention—that the motions to dissolve the attachment were improperly heard by the trial court—it is urged that the trial court lacked jurisdiction to entertain the motion of respondent Gordon to dissolve the attachment as to him, by reason of the fact that appellant had taken and perfected an appeal from the order dissolving the attachment as to defendant Alpert. [2] There is no merit in this contention. If the order made on the Alpert motion discharged the attachment as to Gordon, the appellant was not injured by the subsequent order. But if the former order simply discharged the attachment as to Alpert the court still had jurisdiction to entertain the motion of Gordon to dissolve the writ. In one aspect of the case the order would not be reversed because the appellant was not injured; in the other, the contention of the appellant is futile. [3] It is well settled in this state that each defendant can move to discharge an attachment which, as to him, was irregularly or improperly issued . (*Sparks* v. *Bell,* 137 Cal. 415, [70 Pac. 281] ; *Kennedy* v. *California Savings Bank,* 97 Cal. 93, [33 Am. St. Rep. 163, 31 Pac. 846].)

[4] Another objection of appellant is that no affidavit of merits accompanied the motion of the defendant Gordon to dissolve the attachment. The record shows that the respondent filed an affidavit in which he set forth that he was a resident of the state of California and that the money attached belonged to him. This, we think, was sufficient. The

motion might have been made without any affidavit on his part. Section 557 of the Code of Civil Procedure provides: "If the motion be made upon affidavits on the part of the defendant, but not otherwise, the plaintiff may oppose the same by affidavits or other evidence, in addition to those on which the attachment was made."

[5] Under this same contention the point is made that defendant Gordon's motion should not have been heard for the reason that he appeared specially and not generally. The respondent's motion to dissolve the attachment contains this language: "The defendant S. Gordon appearing for the purposes of this action and for no other . . . " Under the requirements of section 556 of the Code of Civil Procedure, a general appearance is not necessary before the defendant can make his motion to dissolve the attachment. That section reads: "The defendant may also at any time, before or after the release of the attached property; or before any attachment shall have been actually levied, apply, on motion, upon reasonable notice to the plaintiff, to the court in which the action is brought, or to a judge thereof, that the writ of attachment be discharged on the ground that the same was improperly or irregularly issued." Section 554 of the Code of Civil Procedure, relied on by appellant in support of this contention, relates to the release of property under attachment upon the execution of an undertaking and has, therefore, no bearing on the point urged.

[6] Appellant contends that the court should not have heard the motion of Alpert because the notice of motion was insufficient. The insufficiency is not pointed out, nor do the cases cited by appellant support the contention. The notice stated that the motion would be made on the ground that the attachment was improperly issued, in that the alleged cause of action set forth in the complaint and in the affidavit in support of the attachment were insufficient to bring the alleged claim sued upon within the provisions of sections 537 and 538 of the Code of Civil Procedure, and, further, that the writ was irregularly issued in that the claim sued upon was not for an indebtedness upon a contract, express or implied, for the direct payment of money. We think the notice of motion was sufficient.

[7] Nor is there any merit in appellant's contention that the court erred in granting defendant Alpert's motion,

which recited that the attachment was irregularly *and* improperly issued. On this point appellant urges that since the conjunctive form was used it must be made to appear that the issuance of the attachment was both irregular and improper. The appellant does not deny that the attachment was improperly issued. He contends, however, that there was no irregularity in the issuance of the writ, and that, therefore, it was error to have granted the motion. It is too well settled to require citation of authority that if such an order can be upheld upon any ground urged an appellate court will not interfere.

[8] It is urged by appellant that the notice of motion was not filed in proper time. "The motion was noticed for September 18, 1917. An order provided that the service should be made on or before September 15, 1917. The service was made on September 14, 1917, but the moving papers and the order shortening time were not filed until September 17, 1917." It is sufficient to say that this objection should have been made in the trial court in the first instance. It not appearing that this was done, the point will not be considered on appeal.

The orders are affirmed.

Olney, J., Lennon, J., Wilbur, J., and Angellotti, C. J., concurred.

SHAW, J., Dissenting.—I dissent.

The case comes up upon appeal from an order granting a motion to dissolve the attachment. Upon a decision of such a motion the court does not scrutinize the complaint and judge its sufficiency as rigidly as upon considering an order sustaining a demurrer thereto. "Unless the complaint shows upon its face that the plaintiff has no cause of action with the help of an amendment, the attachment should not be dissolved. If the complaint is defective merely, and can be made good by amendment, the plaintiff should be allowed to amend before the decision of the motion to dissolve; but if the complaint is incurable the attachment must be dissolved." (*Hathaway* v. *Davis,* 33 Cal. 168.)

The complaint in this action shows that the defendant, Alpert, had sold six hundred tons of iron rails and other property to the plaintiffs at the price of eight thousand dol-

lars, which the plaintiffs had paid in full, and that the title
to the rails passed to the plaintiffs at the time the price was
so paid; that the plaintiffs obtained 425 tons of said rails
and all of the other property, but that defendant failed to
deliver the remaining 175 tons.

When the title passed to the plaintiffs in pursuance of the
sale, the defendant became the mere bailee of the plaintiffs
with respect to the property sold. His failure to deliver the
175 tons of rails amounted to a conversion thereof. In such
a case it seems to be well settled that the bailor may waive
the tort shown by the conversion and sue the bailee in
*assumpsit* for the value of the property converted. (*Hill*
v. *Smith,* 32 Vt. 433; *Winside State Bank* v. *Lound,* 52 Neb.
469, [72 N. W. 486]; *Deere* v. *Lewis,* 51 Ill. 254; *Davis* v.
*Fish,* 1 G. Greene (Iowa), 406, [48 Am. Dec. 387]; *Lehmann*
v. *Schmidt,* 87 Cal. 20, [25 Pac. 161]. See, also, 1 Cooley
on Torts, 164, note 27.) The theory upon which these de-
cisions rest is that the law implies a contract in such a case
on the part of the bailee to pay to the owner the value of
the goods so converted. The facts stated in the complaint
are sufficient to support an action of this character and con-
sequently they are sufficient to show that the action is, or
could be, by a sufficient amendment, based upon an implied
contract for the direct payment of money. In such a case
an attachment will lie.

If it be contended that the somewhat obscure allegation in
the complaint to the effect that instead of there being six
hundred tons of rails there were only 425 tons should be
taken as an allegation that the remaining 175 tons had no
existence, then the contract set forth, so far as the 175 tons
of rails are concerned, would be a contract for the sale of
property which had no existence. It was designated and
specified property and, therefore, the contract of sale could
not be fulfilled by the delivery of other rails procured else-
where. The rule regarding a contract of sale of property
which has not even a potential existence is that it is a void
contract. (1 Mechem on Sales, sec. 199; *Strickland* v. *Tur-
ner,* 7 Exch. Rep. 217.) In that event, inasmuch as the
plaintiff paid the price thereof, it necessarily follows that
the defendant has received of the plaintiff whatever portion
of the price was properly applicable to the 175 tons of rails
which had no existence. In other words, the defendant has

received from the plaintiff that amount of money for which he has rendered no consideration whatever, and a suit in *assumpsit* for money had and received could be maintained at common law. This would be a suit upon an implied contract for the direct payment of money, in which case an attachment would clearly lie.

It is true that apparently it has been decided in this state that an attachment will not lie where the action is in *assumpsit* upon the implied contract raised at common law in a case where the defendant had unlawfully received money belonging to the plaintiff. (*Babcock* v. *Briggs*, 52 Cal. 502.) But the decision in that case consists of but two lines, and it is difficult to determine whether it was placed upon the ground that no action on contract would lie in such a case as has just been stated, or whether it was placed on the ground that the complaint by its averments confined its scope to an action in tort. The statute allows an attachment in all cases of implied contracts for the direct payment of money. The word "direct" is apparently surplusage, for every contract for the payment of money would be a contract for the direct payment of money. The common law has always been in force in this state except as changed by statute. It is to be presumed that the term "implied contract," as used in the attachment law, was intended to include all cases where at common law a contract was implied. If this be not so, great confusion would result. If it is now proposed to limit the application of that section to cases where the contract is one implied from the evidence or to cases where there is an actual contract for the payment of money, though not expressly stated, and to exclude cases where the contract arises solely by implication of law, the matter should be clearly stated so that it would be generally understood. I do not believe that this was the intent of the statute.

Rehearing denied.

Angellotti, C. J., Lawlor, J., Wilbur, J., Lennon, J., and Olney, J., concurred.