[Civ. No. 29505.   Second Dist., Div. One.   June 24, 1966.]

HARVEY LANDRY, Plaintiff and Respondent, v. JOHN MARSHALL et al., Defendants and Appellants.

Frank E. Munoz for Defendants and Appellants.

No appearance for Plaintiff and Respondent.

LILLIE, J.—Plaintiff sued defendants in three causes of action—for fraud and deceit, breach of contract and money had and received; writ of attachment followed. Defendants moved to dissolve the same and filed with their notice of motion affidavits and certain exhibits; plaintiff filed opposing affidavits. The matter was referred to a court commissioner for findings and recommendations; based upon his findings of fact he recommended to the court that the motion be granted and the writ be discharged, and the court so ordered. Thereafter, pursuant to section 259a, subdivision 2, Code of Civil Procedure, plaintiff filed a motion taking exception to the findings

and recommendations of the commissioner and order dissolving attachment; after a hearing thereon, the court granted plaintiff's motion to vacate the previous order dissolving the writ, found the second cause of action of the first amended complaint to be sufficient to sustain the writ of attachment, and entered an order denying defendants' motion. Defendants appeal from the order.

Plaintiff's first cause of action alleged fraud and conspiracy in connection with certain oral representations made by defendants relative to a written exclusive franchise for the sale and distribution in Arizona of "Fertile Rain," a liquid fertilizer, and the delivery of the fertilizer, perfected metering devices, supplies, equipment, advertising and training necessary to promote the sale and distribution of the product.[1] Plaintiff's second cause of action is for breach of contract. He alleges that on July 14, 1963, he and defendants entered into the following oral contract—in consideration of plaintiff's payment of $30,000 to defendants, the latter were to "immediately" deliver to plaintiff a written exclusive franchise for distribution of "Fertile Rain" in Arizona; "promptly" provide him with all necessary equipment to operate the franchise, including a perfected metering device for the fertilizer, supplies, equipment and sales literature; spend for advertising and promotion 30 cents per gallon of fertilizer sold; provide field training and assist in the operation of necessary equipment; and have "immediately" available to him for shipment to customers sufficient amounts of "Fertile Rain" that plaintiff could satisfy customer orders for the then current season, specifically, 30 drums of fertilizer to be shipped to his order within three days after payment of the $30,000—that time was of the essence of said contract; that he paid the $30,000 on August 14, 1963, but defendants "failed to perform all or any

---

[1]Plaintiff alleged that relying upon these oral representations he paid to defendants $30,000. Thereafter, although he made repeated demands, the written franchise was never proffered to him; the metering device was not perfected, did not satisfactorily perform and was not marketable; defendants had no supplies and equipment and spent no money for advertising; defendants did not supervise and assist in field training; "only limited quantities" of "Fertile Rain" were "available for delivery to customers and such deliveries consisted of defective, faulty, and unusable merchandise"; and the metering device for use of the fertilizer had not been perfected and "was not then available in ample quantity for immediate delivery to customers." Around October 1, 1963, and at various times thereafter, he made demands upon defendants for the return of his $30,000 but they were refused; and for the "foregoing failure of defendants to perform" he seeks damages for $30,000 plus $10,000 exemplary damages.

one of the terms and conditions of the oral contract"—no written exclusive franchise was ever offered or delivered to him; equipment in good working order necessary to conduct a franchise operation was not provided when requested by him "and in time for the then current marketing season"; money for advertising, assistance, field training and promotion of the product were never provided, although requested; and there was "not immediately available" when requested any amounts whatsoever of "Fertile Rain," and "when such product finally became available it was in such limited quantity and so defectively packaged that plaintiff was unable to utilize such product for sales to customers during the then current marketing season," and that as a direct and proximate result of such breach of contract he was damaged in the sum of the total consideration paid to defendants by him, or $30,000. The third cause of action is in a common count for money had and received.

Annexed to defendants' motion is the declaration of defendant Marshall. He asserted delivery of all materials due plaintiff in accordance with their agreement, shipped in accordance with plaintiff's instructions; that plaintiff breached the contract by refusing to sign the franchise agreement and by conspiring with one Folden to drive him out of business; and that plaintiff commenced manufacturing liquid fertilizer chemicals and pumps in direct competition with defendants. The affidavit of Casey Folden asserts that plaintiff refused to sign the written franchise agreement on August 21, 1963; that plaintiff purchased $30,000 worth of "Fertile Rain" and metering devices, and necessary equipment for sale and distribution thereof by him to customers; that all was of merchantable quality and fit for the purpose designed and used by plaintiff; that he was induced to enter into an agreement with plaintiff to form a corporation for the manufacture and sale of "Fertile Rain"; and that plaintiff admitted that the purpose of bringing the suit was to force defendants into bankruptcy so that he might ultimately secure all right, title and interest of defendants in "Fertile Rain" and fertile mix and other necessary materials.

In opposition to these affidavits, plaintiff filed several counteraffidavits. In his own (affidavit of Harvey Landry), he specifically denies the accusations in defendants' declarations and, among other things, alleges that he has "received absolutely no consideration in return for $30,000 expended in reliance on defendants' oral agreement"; that on August 17,

1963, when he did not receive the 30 drums of fertile mix concentrate, he called defendant Marshall "demanding shipment per our contract"; that no shipments were made until *after* the middle of September 1963, and then, only part shipment was received, which shipment was improperly sealed so that the major amount of the concentrate was lost; that the wrong type of fertile mix pumps was sent "so that the pumps and the concentrate could not be used as per [his] marketing plan"; that immediately upon receiving the shipment, he protested its tardiness to defendant Marshall and advised him of the improper sealing; that he was promised full redress immediately, both as to the concentrate and the defective pumps; that defendants made no such redress despite numerous oral and written requests therefor; that in the beginning of October 1963, he orally demanded of defendant Marshall that he return to him his $30,000 and that he take back the tardy and imperfect shipment, which Marshall refused to do; that he made numerous similar oral demands to Marshall pointing out to him that he was guilty of fraud and misrepresentation in connection with the oral contract; that "the combination of imperfect pumps plus tardy and improperly sealed concentrate rendered completely *valueless* the shipment sent to [him] by defendants"; that he "requested Marshall to take back all equipment and following his refusal to do so [he] placed all equipment outside of [his] possession and in the hands of third parties"; and that he "never received ONE DOLLAR worth of consideration for the $30,000 given to defendants under the aforesaid oral contract." The declaration of Hensley asserts that no written franchise agreement was ever proffered to plaintiff for his signature; that necessary equipment for the marketing of "Fertile Rain" was never sent to plaintiff with the exception of some defective metering devices in the fall of 1963; that no usable amount of sales literature was ever sent to plaintiff; that although plaintiff requested shipment of 30 drums of "Fertile Rain" within three days of August 14, 1963, no shipments were forthcoming until the middle of September when 10 to 15 percent of the order was shipped "but at a date too late for the then current marketing season," also the said shipment was so defectively sealed that it was rejected by a number of "Fertile Rain" dealers, and the metering devices in limited number were not in good working order and not marketable; and that defendant did not provide plaintiff "with any property of useful working value."

Section 537, Code of Civil Procedure, provides in pertinent

part: "The plaintiff, at the time of issuing the summons, or at any time afterward, may have the property of the defendant attached, as security for the satisfaction of any judgment that may be recovered . . . in the following cases:

"1. In an action upon a contract, express or implied, for the direct payment of money, (a) where the contract is made or is payable in this state; . . ."

Appellants' sole contention is that the attachment should have been dissolved because the second cause of action does not fall within that class of cases in which attachment will issue (Code Civ. Proc., § 537, subd. 1); they claim that it is an action on a contract to do something other than pay money—to deliver goods and services, citing *Willett & Burr* v. *Alpert*, 181 Cal. 652 [185 P. 976]; *California Packing Corp.* v. *Kato*, 45 Cal. App. 491 [188 P. 57]; *Allen* v. *Merchants Elec. Co.*, 54 Cal.2d 67 [4 Cal.Rptr. 527, 351 P.2d 799]; *Sturtevant* v. *K. Hovden Co.*, 60 Cal.App. 696 [214 P. 244], and *Mauss* v. *Kato*, 117 Cal.App. 663, 665 [4 P.2d 179]. Their argument fails because it is predicated on the facts contained in their affidavits: that there was no failure of consideration because plaintiff received "most" of the goods and materials; and that plaintiff did not rescind the oral contract because he neither offered to return nor returned to them any of the materials received by him.

While respondent has not seen fit to appear in this appeal, we can accept neither the statement of facts set out in appellants' opening brief nor those alleged in the affidavits annexed to their motion to dissolve the writ of attachment. They are in direct conflict with those alleged in plaintiff's counterdeclarations (Code Civ. Proc., § 557) and verified amended complaint which stood as an affidavit on the hearing on the motion in the lower court (*San Francisco Iron etc. Co.* v. *Abraham*, 211 Cal. 552, 554 [296 P. 82]; *Powers* v. *Freeland*, 114 Cal.App. 146, 149 [299 P. 736]); for the purposes of the motion the facts alleged therein clearly were accepted by the judge who resolved the factual conflict against defendants. ■ Since all intendments are in favor of the lower court's ruling, the affidavits on behalf of the respondent are here deemed to establish not only the facts directly stated therein, but all facts reasonably to be inferred from those stated. (*DeWit* v. *Glazier*, 149 Cal.App.2d 75, 78 [307 P.2d 1031]; *Clapp* v. *Kramer*, 162 Cal.App.2d 237, 238 [328 P.2d 510].)

■ In his pleading plaintiff alleged a failure of consideration which, for the purpose of the motion, was properly deemed as true by the court. (*Redwood Fibre etc. Co.* v. *Miller*

*Mfg. Co.*, 61 Cal.App.2d 505, 512-513 [143 P.2d 389]; *Rose* v. *Pearman*, 163 Cal.App.2d 480, 484 [329 P.2d 501].) The second cause of action alleges that defendants "failed to perform all or any one of the terms and conditions of the oral contract" (par. IV); and prayed for the return of plaintiff's total consideration, the sum of $30,000. On the failure of consideration plaintiff further elaborated in his affidavit. Therein he asserted that he "received absolutely no consideration in return for $30,000 expended" by him; and that the combination of the defective pumps and limited supply of "Fertile Rain" concentrate, improperly sealed, rendered "completely valueless" the partial overdue shipment sent by defendants to him, the result of which he "never received ONE DOLLAR worth of consideration for the $30,000."

■ The reference in section 537, subdivision 1, Code of Civil Procedure, to "implied" contract includes contracts "implied in law" or quasi-contracts. ■ Thus, an attachment may issue in any action properly classified as quasi-contractual, no matter the nature of defendant's breach. (1 Witkin, Cal. Procedure (1954), Provisional Remedies, § 49, p. 891.) ■ "It is well settled that when a sum of money has been paid pursuant to the terms of a sales contract and the consideration for the sale has entirely failed, the law will imply a promise on the part of the vendor to repay the money; and in such case an attachment will lie. (*McCall* v. *Superior Court, supra*; *Bennett* v. *Superior Court*, 218 Cal. 153 [21 P.2d 946]; *Hamilton* v. *Baker-Hansen Mfg. Co., supra*; *S. C. V. Peat Fuel Co.* v. *Tuck*, 53 Cal. 304; 3 Cal.Jur. 424.)" (*Redwood Fibre etc. Co.* v. *Miller Mfg. Co.*, 61 Cal.App.2d 505, 511 [143 P.2d 389]; *McCall* v. *Superior Court*, 1 Cal.2d 527, 533 [26 P.2d 642, 95 A.L.R. 1019]; *Eaton* v. *Queen*, 78 Cal.App.2d 571, 574 [177 P.2d 997].) ■ Moreover, attachment will issue on such an action, to recover money paid under a contract, on failure of consideration even though there was no rescission by plaintiff (*S. C. V. Peat Fuel Co.* v. *Tuck*, 53 Cal. 304, 305; *Bennett* v. *Superior Court*, 218 Cal. 153, 161 [21 P.2d 946]; see also, *Powers* v. *Freeland*, 114 Cal.App. 146, 150-151 [299 P. 736]) or rescission of the contract specifically pleaded. (*Redwood Fibre etc. Co.* v. *Miller Mfg. Co.*, 61 Cal.App.2d 505, 513-514 [143 P.2d 389].)

■ However, here, in addition to the alleged failure of consideration, there is also a showing of plaintiff's rescission of the oral contract. While the second cause of action does not

formally allege that plaintiff rescinded the contract, the first amended complaint considered in its entirety (*Eaton* v. *Queen*, 78 Cal.App.2d 571, 576 [177 P.2d 997]; *Stotland* v. *Mobile Homes Engineering Corp.*, 197 Cal.App.2d 815, 818 [17 Cal. Rptr. 591]) reflects that by his conduct he did just that. Too, his affidavits assert that both orally and in writing he rescinded the contract and tendered to defendants all of the goods and merchandise shipped to him. They show that immediately upon receipt of the late partial shipment of defective goods plaintiff complained to defendant Marshall, and when defendants refused redress, he thereafter repeatedly requested Marshall, orally and in writing, to take back the shipment and return his $30,000; following defendants' refusal, plaintiff divested himself of the goods by placing them in the hands of a third person. By this conduct, plaintiff did in fact notify defendants that he considered the oral contract at an end tendering back the goods, seeking to restore to defendants what he had received from them under the contract, and demanding the return of his $30,000 cash.

"It is not necessary that the notice to rescind shall be formal and explicit; it is sufficient that notice shall be given to the other party which clearly shows the intention of the person rescinding to consider the contract at an end." (*McNeese* v. *McNeese,* 190 Cal. 402, 405 [213 P. 36].) In *Redwood Fibre etc. Co.* v. *Miller Mfg. Co.,* 61 Cal.App.2d 505 [143 P.2d 389], under a contract of sale, plaintiff returned one of the mills to defendant and notified it that the machines would and could not do the required work; defendant contended that the complaint failed to allege a rescission of the contract and that consequently an attachment will not lie. Said the court: ". . . while it does not appear from the allegations of the complaint that a formal notice of rescission was ever served upon defendant, it does sufficiently appear in our opinion from the other allegations that there was an offer to return the second mill. As said in the case of *Mahony* v. *Standard Gas Engine Co.,* 187 Cal. 399 [202 P. 146], '. . . plaintiff could not have done more, except, possibly, to have said, which would have added nothing to the efficiency of the rescission, "I rescind the contract existing between us." ' " (Pp. 513-514.)

After notice of rescission of a contract for fraud, failure of consideration, or other ground, a plaintiff may sue to recover the money he paid under the contract; upon rescission the law implies an obligation to return the money paid,

and an action on the implied contract supports a writ of attachment. (*McCall* v. *Superior Court*, 1 Cal.2d 527, 531 [36 P.2d 642, 95 A.L.R. 1019]; *Bennett* v. *Superior Court*, 218 Cal. 153, 164 [21 P.2d 946]; *Weaver* v. *Superior Court*, 93 Cal.App.2d 729, 732 [209 P.2d 830, 210 P.2d 246]; *Filipan* v. *Television Mart*, 105 Cal.App.2d 404, 405 [233 P.2d 926].)

The second cause of action, which meets statutory requirements, will support an attachment despite the joinder of other causes of action on which attachment cannot be had. (*Redwood Fibre etc. Co.* v. *Miller Mfg. Co.*, 61 Cal.App.2d 505, 510 [143 P.2d 389]; *Stotland* v. *Mobile Homes Engineering Corp.*, 197 Cal.App.2d 815, 819 [17 Cal.Rptr. 591].)

There is here no question of ascertation of damages under the implied-in-law contract, for plaintiff parted with $30,000 and, having alleged that he received no consideration therefor, seeks return of the full sum in his second cause of action. ". . .[I]t is well established that an attachment will lie in a breach of contract action where '[T]he damages are readily ascertainable by reference to the contract and the basis of the computation of damages appears to be reasonable and definite.' (*Force* v. *Hart*, 205 Cal. 670, 673 [272 P. 583].)" (*Stotland* v. *Mobile Homes Engineering Corp.*, 197 Cal.App.2d 815, 818 [17 Cal.Rptr. 591].)

The factual situation in *Powers* v. *Freeland*, 114 Cal.App. 146 [299 P. 736], does not support appellants' representation that the case is "virtually on all fours" with the instant one. While the complaint therein alleged the stock to be worthless, it also alleged receipt of stock dividends of over $250 which the court said negatived the plaintiff's contention that the consideration was valueless. The first amended complaint herein and plaintiff's affidavits allege unequivocally that the tardily received defective merchandise had no value whatever.

For the foregoing reasons the order is affirmed.

Wood, P. J., and Fourt, J., concurred.