[No. 12915. In Bank. — August 2, 1889.]

## POINDEXTER DUNN, APPELLANT, *v.* C. E. MACKEY, RESPONDENT.

AGENT — LIABILITY UNDER CONTRACT TO SELL FOR SPECIFIED AMOUNT. — An agent to sell real property, who expressly contracts to sell the same within a year for a specified amount, is liable in damages to his principal for a breach of his contract.

ID. — MEASURE OF DAMAGES. — In an action to recover for the breach of such a contract, the measure of damages is the difference between the actual value of the land at the end of the year and the amount the agent bound himself to realize from it.

ID. — ATTACHMENT MAY ISSUE IN ACTION FOR BREACH. — An attachment may be properly issued in such an action.

ID. — AMOUNT DUE UNDER CONTRACT HOW SUFFICIENTLY SHOWN. — The amount actually due under the contract is sufficiently shown, for the purposes of the attachment, when the complaint alleges precisely what the damages are, and the affidavit in attachment states that the defendant is indebted to the plaintiff in the same amount, upon an express contract for the direct payment of money.

ID. — ACTION FOR DAMAGES FOR BREACH OF CONTRACT — WHEN ATTACHMENT MAY ISSUE. — An attachment may issue in an action for damages for the breach of a contract, even when proof is necessary at the trial to show the amount of damages. But to authorize its issuance, there must exist a basis upon which the damages can be determined by proof.

APPEAL from an order of the Superior Court of Los Angeles County dissolving an attachment.

The facts are stated in the opinion of the court.

*Wicks & Ward,* for Appellant.

*Barclay, Wilson & Carpenter,* for Respondent.

WORKS, J. — This is an appeal from an order dissolving an attachment.

The complaint is founded on the following agreement: —

"This agreement, made and entered into on the twenty-eighth day of July, 1887, by and between C. E. Mackey, of the city and county of Los Angeles and state of California, who will be hereinafter referred to as the party of the first part, and Poindexter Dunn, of the county of

St. Francis, and state of Arkansas, who will be herein-
after mentioned as the party of the second part,—

"Witnesseth: That the said second party having this
day purchased from said party of the first part, as agent
for George D. Rowan, the following described lots of
land situated in the city and county of Los Angeles and
state of California, to wit, lots numbered nineteen (19)
and twenty (20) of the Dana tract, as per map recorded
in book 5, at page 324, of miscellaneous records of Los
Angeles County, for the sum and price of ten thousand
dollars (10,000), the said first party, for and in consider-
ation of the sum of one dollar cash in hand to him paid
by the said second party, the receipt of which is hereby
acknowledged, and of the covenants and agreements here-
inafter mentioned and set forth, hereby agrees to take
charge of and sell said lots of land for said second party,
as follows, to wit:—

"The said first party agrees and binds himself to sell
said lots for said second party within twelve months from
the date hereof; and to guarantee, account for, and pay
over to said second party at least twelve thousand five
hundred dollars net therefor, except interest paid by
said second party on the deferred payment for said lots.
Said second party agrees that said first party may re-
turn and have, and said first party agrees to accept, all
excess over said twelve thousand five hundred dollars
which he may receive for said lots, for his compensation
for his services as agent herein.   Said first party agrees
to account to said second party, or his authorized agent,
for the proceeds of sale of said premises as above stated
whenever, prior to the expiration of said twelve months,
he may effect a sale of said premises.   It is agreed that
said first party may sell said lots for not less than one
half cash and the balance within twelve months from
date of sale, with interest at ten per cent per annum.

"In witness whereof, said first and second parties have
hereunto set their hands and seals."

The complaint alleges that the defendant failed and refused to sell the property as agreed upon, or at all; that the plaintiff was induced to buy the same by the promise of the defendant to resell the property as agreed in the contract; that he tendered a deed to the defendant, and demanded that he pay him the sum agreed to be paid, and execute his note for the deferred payments as mentioned in the contract, and to account for and pay the money provided for in said contract.

It is further averred "that the highest market value of said property described in the foregoing agreement was, upon the twenty-eighth day of July, 1888, and has been ever since, and still is, the sum of nine thousand dollars, and no more; that by virtue of defendant's failure to keep and perform the terms and conditions of said contract, and by virtue of his breach thereof, as hereinabove set forth, this plaintiff has suffered damage in the sum of three thousand five hundred dollars."

The prayer of the complaint is for judgment for "three thousand five hundred dollars, and for costs of suit, and for such other and further relief as to this honorable court may seem meet and proper."

The attachment was founded on this complaint.

The respondent defends the action of the court below in dissolving the attachment on two grounds: 1. That the complaint did not state a cause of action; 2. That the suit was to recover unliquidated damages, and for that reason no attachment could properly issue.

The objection to the complaint is, that "there is no sufficient allegation of a breach of contract; that the contract was to sell as the agent of the plaintiff, and pay over the proceeds of the sale; not to pay three thousand five hundred dollars damages, or any sum, in case of failure to sell"; and that " plaintiff attempts to treat defendant as a purchaser, tenders a deed, and demands twelve thousand five hundred dollars, and alleges damages upon that theory."

We give these objections in the language of counsel, for the reason that we do not understand what is meant sufficiently to attempt to state their point.

The complaint is one for damages for the breach of a contract, and is sufficient. The contract sued on was not one of agency for the sale of real estate, simply. The defendant positively bound himself to realize to the plaintiff, out of the property, within one year, the sum of twelve thousand five hundred dollars. We see no reason why he should not be held liable in damages for a breach of such a contract as well as any other. (*Janin* v. *Browne*, 59 Cal. 37, 44.)

As to the other point, the proper measure of damages is the difference between the actual value of the land at the end of the year and the amount the defendant bound himself to realize from it to the plaintiff. Therefore the simple question is, whether an attachment properly issued upon a complaint which upon its face showed precisely what the damages were, the affidavit in attachment showing that the defendant was indebted to the plaintiff in the sum of three thousand five hundred dollars, upon an express contract for the direct payment of the money. There is no uncertainty appearing on the face of the proceedings as to the amount actually due. At the trial the only thing necessary to fix and determine the amount is to prove the value of the land. The amount agreed to be realized and paid over to the plaintiff is fixed by the contract.

Our code does not require that the amount due on the contract shall appear from the contract itself (Code Civ. Proc., sec. 537), but that the amount of the indebtedness shall be shown by affidavit. (Code Civ. Proc., sec. 538.)

Attachment may issue in an action for damages for the breach of a contract. (*Donnelly* v. *Strueven*, 63 Cal. 182.) And this, where proof is necessary at the trial to show the amount of damages. (Drake on Attachment, secs. 13–23.)

But there must exist a basis upon which the damages can be determined by proof. Thus it is said "where the contract sued upon furnished a standard by which the amount due could be so clearly ascertained as to enable the plaintiff to aver it in his affidavit, or the jury by their verdict to find it, an attachment might issue." (Drake on Attachment, sec. 15; *Wilson* v. *Wilson,* 8 Gill, 192; 50 Am. Dec. 685. To the same effect see Wade on Attachment, sec. 11 et seq. *New Haven Sawmill Co.* v. *Fowler,* 28 Conn. 103; *Lawton* v. *Reil,* 51 Barb. 30; *Lawton* v. *Reil,* 34 How. Pr. 465; *Ferner* v. *Collins,* 1 Martin, N. S., 369; *Cross* v. *Richardson,* 7 Mart. (La.) 166.)

The case of *Donnelly* v. *Strueven, supra,* is in point. The action was to recover damages for the breach of a contract to buy and pay for certain personal property, and this court held that it appeared from the complaint, as well as from the affidavit, that the plaintiff's action was founded in contract, and not in tort, and therefore defendant's ground of motion was not well taken. It is true that the question of uncertainty as to the amount of the debt was not directly determined, but it existed there as clearly as in the case before us, and it was held that the attachment was properly issued.

Counsel for respondent rely upon *Hathaway* v. *Davis,* 33 Cal. 165, as supporting their position, but it is directly against them. It was held that an appeal bond was a contract for the direct payment of money, although the amount to be paid was not fixed by the instrument itself, and that attachment would lie. The court recognized the well-established rule that it is only necessary that the contract be such as to furnish information from which the amount can be ascertained, and said: "We think a clew is afforded in the next section (121), where the plaintiff is required to make a certain affidavit in order to procure an attachment. He must be able to swear, among other things, that the defendant is indebted in a certain sum, specifying the amount. This

language excludes all causes of action for unliquidated sums of money, for, until they have been liquidated by the verdict of a jury, it is impossible for the plaintiff to swear to the amount, and confines the right of the plaintiff to an attachment to cases of contract, where the liability of the defendant can be ascertained with certainty, and is not in doubt until after a trial, or in other words, where the amount to be paid is fixed by the terms of the contract, *or can be readily ascertained from the information which it affords.* Every such case is clearly within the policy of the attachment law, which is designed for the benefit of acknowledged creditors, and not those who may or may not turn out to be such according to the finding of a jury. In such cases the payment which has been promised in a certain sense may be said to be direct. While this view is not very satisfactory, it is more so than any other which finds color in the ambiguous words of the statute. There is certainly no reason why an attachment should be allowed in an action upon a promissory note which is not equally persuasive in the present case. The plaintiff can swear to the amount due with equal accuracy, and his right to recover is as clear, and his claim upon the law for the advantages of this remedy no less reasonable and just. True, the contract does not specify the precise amount to be paid, but it points directly to the instrument or record which does, which is all that is required."

"To read 'direct' as the opposite to 'collateral' would be to create a distinction of very doubtful foundation, and certainly opposed to the general policy of the act. To so read it would be to exempt all collateral contracts from the operation of the act. Indorsers, guarantors, sureties, and all others who undertake to pay or become responsible for the debts of another could not be reached by attachment; and yet there can be no good reason why they should be excepted. We are of the opinion that the legislature intended no such distinction."

There can be no doubt that the defendant bound himself to realize and pay to the plaintiff within one year a certain and fixed sum of money. The fact that he was, if possible, to realize the money by a sale of property to some one else does not affect the question, as he bound himself unqualifiedly to account for and pay over that sum of money at the end of the year, or before if he made a sale of the property. The plaintiff might perhaps have treated this as a binding contract to pay the money, and upon tendering him the deed have demanded payment from him according to its terms, and upon failure, to have maintained an action for the whole sum. But he was not bound to do so. Having brought his suit for damages, the only evidence necessary to fix the amount due him is as to the value of the land. This is as easily done as it would be to prove what the services were worth in an action on an implied contract for work done or upon an express contract to pay what the services were reasonably worth, and certainly such contracts would uphold an attachment.

Counsel contend that the defendant bound himself to pay only on condition that he made a sale of the property. But we do not so construe the contract. He bound himself absolutely to sell and pay over the money within a year, and to pay *before* the end of the year if he made sale of the property.

Order reversed.

PATERSON, J., SHARPSTEIN, J., and THORNTON, J., concurred.

McFARLAND, J., dissented.