[Civ. No. 1300.    Third Appellate District.—November 19, 1914.]

## H. LOWENBERG, Respondent, v. L. JACOBSON'S SONS, Appellants.

CONTRACTS—SALE OF MERCHANDISE—ACTION FOR COMMISSIONS AGAINST NONRESIDENTS—RIGHT OF ATTACHMENT.—In an action by a sale's agent to recover commissions, where the complaint alleges that defendants are residents of the state of New York where they are engaged in the business of selling clothing and wearing apparel, and where they have their principal place of business, and each of them has been continuously absent from this state from the time of the execution of the written agreement in California, at which place plaintiff had his headquarters, and under the agreement plaintiff was to handle defendants' line of goods in certain territory, selling the same by sample on a certain percentage on all orders checked and shipped, deducting all returns, commissions to be paid from the first to the tenth of each month for the goods shipped during the previous month, and it being further alleged that during all the

time the contract was in force, there existed between the parties an open, mutual, and current account, but that defendants withheld from plaintiff commissions to which he was entitled and made erroneous charges against plaintiff; that the commissions and charges amounted to four hundred and sixty dollars in excess of all credits due defendants, the cause of action stated constitutes the legal basis for the issuance of a writ of attachment as provided by our statute, as the complaint discloses that the action was upon an express contract made in this state "for the direct payment of money," and that the defendants at the time of the beginning of the action were nonresidents of the state.

ID.—ATTACHMENT—AMOUNT DUE—CONTRACT NEED NOT SPECIFY.—In such a case it is not necessary that the contract itself should specify the total amount of money to be paid; the requirement of the statute is satisfied when the contract furnishes the measure of liability or the information from which the amount due can be ascertained. This is not at all the case of unliquidated damages for which an attachment cannot be had.

ID.—AFFIDAVIT FOR ATTACHMENT—SUFFICIENCY OF—SECTION 538, CODE CIVIL PROCEDURE.—An amended affidavit for an attachment is sufficient in such a case which avers, "That the above named defendants are and were on the 13th day of November, 1912, indebted to said plaintiff in the sum of $460, over and above all legal set-offs and counterclaims, upon an express contract for the direct payment of money, to wit: for commissions due plaintiff from said defendants for selling and disposing of said defendants' goods; that such contract was made and executed in this state, and that the payment of the same was not and has not been secured by any mortgage or lien upon real or personal property, or any pledge of personal property; that the said defendants are and were, on the said 13th day of September 1912, nonresidents of the state of California, to wit: residents of the state of New York; that the said sum for which the attachment was and is asked and sought herein was and is an actual *bona fide* existing debt, due and owing from the said defendants to the said plaintiff; that the said attachment was and is not sought, and the said action was and is not prosecuted to hinder, delay or defraud any creditor or creditors of the said defendants, or any creditor or creditors of either of said defendants." Such affidavit exceeds the demands of section 538 of the Code of Civil Procedure, but this does not vitiate or impair it.

ID.—MOTION TO DISSOLVE ATTACHMENT—AMENDED AFFIDAVIT—FILING BEFORE DECISION OF MOTION SUFFICIENT.—There is a substantial compliance with the requirement of section 538 of the Code of Civil Procedure, permitting the filing of an amended affidavit for an attachment, where the same is filed after the submission of a motion to dissolve the attachment, but before the actual determination thereof.

ID —UNDERTAKING FOR ATTACHMENT—SUFFICIENCY OF.—In such a case, the contention that the undertaking for the attachment was insufficient in that it only imposed upon the surety an obligation for damages that might be suffered by all of the defendants collectively, and not individually by each of the defendants, cannot be maintained, where it sufficiently appears from the complaint that the action was really against only one defendant and there is no prayer for an individual judgment against the members of the association, and where the record besides does not show that any attack was made upon the amended undertaking, the notice of motion to dissolve having been addressed to the original bond, and it not affirmatively appearing that at the hearing of the motion any objection was made to the undertaking.

APPEAL from an order of the Superior Court of Alameda County refusing to dissolve an attachment. William H. Waste, Judge.

The facts are stated in the opinion of the court.

Lloyd S. Ackerman, for Appellants.

Harry C. Morrison, for Respondent.

BURNETT, J.—The appeal is from an order refusing to dissolve an attachment. The complaint set forth that the defendants are residents of the state of New York; that they are engaged in the business of selling clothing and wearing apparel to the trade; that their principal place of business is located in said state; that each of them has been continuously absent from the state from September, 1907, up to and including the month of December, 1911; "that during the month of September, 1907, said plaintiff and said defendants entered into an agreement in writting, made and executed in the state of California, whereby it was understood and agreed that said plaintiff should handle defendants' lines of goods in that territory located west of Denver, Colorado, selling the same by sample, on a basis of 7½% commission on all orders checked and shipped, deducting all returns, commissions to be paid from the first to the tenth of each month for goods shipped during the previous month; that said plaintiff's headquarters were located in the state of California; that said agreement was in full force and effect continuously from the said month of September, 1907, up to and including the month of December, 1911." Then

followed allegations that during all of said time there existed
between said parties an open, mutual, and current account;
that defendants had withheld from plaintiff commissions to
which he was and is entitled and that erroneous charges
against plaintiff had been made by defendants in said ac-
count; "that the aforesaid commissions, so withheld as afore-
said, and the charges so made and entered as aforesaid,
amount to the sum of four hundred and sixty dollars, in
excess of any and all credits or sums of money due, owing
or coming to said defendants from said plaintiff; that said
plaintiff has made many demands upon said defendants for
said sum of four hundred and sixty dollars, but that said
defendants have refused, failed and neglected to pay to said
plaintiff said sum of four hundred and sixty dollars . . .;
that no part of said sum of four hundred and sixty dollars
has been paid and there is still due, owing and coming to
said plaintiff from said defendants the sum of four hundred
and sixty dollars."

We entertain no doubt that the cause of action thus stated
constitutes the legal basis for the issuance of a writ of at-
tachment as provided by our statute. The said complaint, in
connection with the affidavit thereafter filed, clearly dis-
closes that the action was upon an express contract "for the
direct payment of money" and that the said contract was
made in this state and was not "secured by any mortgage or
lien upon real or personal property, or any pledge of per-
sonal property." The situation is therefore entirely within
the contemplation of subdivision 1 of section 537 of the
Code of Civil Procedure. But the provision of the statute
applicable to this case is even more circumscribed. It is
found in subdivision 2 of said section, as follows: "The
plaintiff, at the time of issuing the summons, or at any time
afterward, may have the property of the defendant attached,
. . . 2. In an action upon a contract, express or implied,
against a defendant not residing in this state." As we have
seen, the defendants, at the time of the beginning of the
action, were residents of the state of New York and it is posi-
tively averred that they entered into a written contract to
pay plaintiff a certain commission for sales of merchandise
and that so much money was due and owing to plaintiff under
said contract. It is not necessary that the contract itself
should specify the total amount of money to be paid. That,

of course, in this case depended upon the number and extent of the sales that should be made by plaintiff. The requirement of the statute is satisfied when the contract furnishes the measure of liability or the information from which the amount due can be ascertained. This is not at all the case of unliquidated damages for which an attachment cannot be had. The distinction is clear and it is pointed out in several decisions of the supreme court. In *De Leonis* v. *Etchepare,* 120 Cal. 410, [52 Pac. 718] it is said: "Nor is it necessary, in order to give a right of attachment, that the amount in which the defendant may be liable should appear upon the face of the contract or instrument by or from which the liability is to be determined. It often happens that the amount due under a contract does not appear from the contract itself. 'Our code does not require that the amount due on the contract shall appear from the contract itself (Code Civ. Proc., sec. 537), but that the amount of the indebtedness shall be shown by affidavit. (Code Civ. Proc., sec. 538.) Attachment may issue in an action for damages for the breach of a contract. (*Donnelly* v. *Strueven,* 63 Cal. 182.) And this, where proof is necessary at the trial to show the amount of damages. (Drake on Attachment, secs. 13, 23.) But there must exist a basis upon which the damages can be determined by proof.' (*Dunn* v. *Mackey,* 80 Cal. 107, [22 Pac. 64].) Where the contract does not furnish the measure of the liability of the defendant, and the damages are unliquidated, an attachment cannot be had, and the language quoted by appellant, from *Hathaway* v. *Davis,* 33 Cal. 161, means no more than that."

As to the cases from other states, cited by appellants, we may appropriately adopt the following comment from *Kohler* v. *Agassiz,* 99 Cal. 12, [33 Pac. 742] : "The attachment laws of the several states differ in so many particulars, that without the utmost caution in comparing their provisions with our own, we are in constant danger of being led astray, or unduly influenced by decisions apparently in point, but in reality resting upon a different basis. Even our own adjudicated cases, many of them growing out of questions applicable to resident debtors, have no proper application to the different *status* occupied by nonresidents."

There is no ground for any criticism of the sufficiency of respondent's amended affidavit which was formally executed

and contained the following averments: ''That the above named defendants are and were on the 13th day of September, 1912, indebted to said plaintiff in the sum of $460, over and above all legal set-offs and counterclaims, upon an express contract for the direct payment of money, to wit: for commissions due plaintiff from said defendants for selling and disposing of said defendants' goods; that such contract was made and executed in this state, and that the payment of the same was not and has not been secured by any mortgage or lien upon real or personal property, or any pledge of personal property; that the said defendants are and were, on the said 13th day of September, 1912, nonresidents of the state of California, to wit: residents of the state of New York; that the said sum for which the attachment was and is asked and sought herein was and is an actual *bona fide* existing debt, due and owing from the said defendants to the said plaintiff; that the said attachment was and is not sought, and the said action was and is not prosecuted, to hinder, delay, or defraud any creditor or creditors of the said defendants, or any creditor or creditors of either of said defendants.'' How completely and punctiliously plaintiff thus complied with the demands of the statute is made apparent by a reading of section 538 of the Code of Civil Procedure. Indeed, he exceeded the requirement of subdivision 2 of said section which is applicable to the present case. His redundant averments, however, did not vitiate nor impair the affidavit nor interfere with its operation as a legal step in the statutory process of obtaining a writ of attachment.

There is some question, however, as to whether the amended affidavit was filed in time. The record shows that, on the fifteenth day of November, 1912, the court submitted the motion to dissolve the attachment and that the amended affidavit was not filed until December 20th following. It was filed, though, before the court passed upon said motion. It is stated by respondent that ''Said matter was not finally submitted on said 15th day of November, 1912, for both attorneys for appellants and respondent filed points and authorities thereafter,'' but the recital of the transcript must be accepted as conclusive. Section 558 of the Code of Civil Procedure provides that upon application to dissolve a writ of attachment if it satisfactorily appears that it ''was improperly or irregularly issued it must be discharged; pro-

vided, that such attachment shall not be discharged if at or before the hearing of such application, the writ of attachment, or the affidavit, or undertaking upon which such attachment was based shall be amended and made to conform to the provisions of this chapter.'' We think there is a substantial compliance with the requirement of this provision where the amended affidavit is filed before the actual determination of the motion to dissolve the attachment. Although not shown by the record, it may be, as stated by respondent, that ''on the first day of November, 1912, when the motion to dissolve attachment came on regularly for hearing the respondent through his attorney moved the court for permission to amend the writ of attachment or the affidavit or undertaking upon which such attachment was based to conform to all the requirements of chapter IV, title VII, part II of the Code of Civil Procedure of this state, the court at that time informed the attorneys for appellants and respondent that if it was found that the action was one in which an attachment could properly issue and that amendments to any of the requirements were necessary that such permission would be granted.''

We may assume that the proceeding was, as thus indicated, and we think that the court had authority to allow the amended affidavit to be filed after the application was made but prior to the adjudication of the motion to discharge the attachment.

Appellants also question the sufficiency of the undertaking and direct their attack particularly at the expression of the obligation of the surety in the following language: ''does hereby undertake and promise to the effect that if the said defendants or either of them recover judgment, in said action, the said plaintiff will pay all costs that may be awarded to the said defendants and all damages which they may sustain by reason of the said attachment not exceeding the sum of two hundred dollars. And that if said attachment is discharged on the ground that plaintiff was not entitled thereto, under section 537 of the Code of Civil Procedure, the plaintiff will pay all damages which defendant may sustain by reason of the said attachment not exceeding the sum of two hundred dollars.'' The point is that the obligation should have been assumed and declared in favor of each of the defendants but by said undertaking liability was im-

posed upon the surety only for damages that might be suffered by all the defendants collectively. It is claimed that the same rule in this respect applies to the undertaking as to the affidavit and reference is had to *Pajaro Valley Bank* v. *Scurich,* 7 Cal. App. 732, [95 Pac. 911], wherein it was held that "where the writ of attachment was against the maker and indorsers of a promissory note, an affidavit for the writ merely stating 'that the attachment is not sought and the action is not prosecuted to hinder, delay or defraud any creditor or creditors of the defendants' without adding the words, 'or any creditor of either of said defendants' is fatally defective; and a motion to discharge the writ on that ground should have been granted." (See, however, *Nichols* v. *Davis,* 23 Cal. App. 67, [137 Pac. 41].)

But passing that point, while the complaint here is somewhat loosely drawn, we think it sufficiently appears that the action was really against only one defendant, that is, L. Jacobson's Sons, the plaintiff being uncertain whether defendant constituted a partnership or a corporation, and it may be stated that there was no prayer for an individual judgment against the members of the association.

Besides, the record does not show that any attack was made upon the amended undertaking, the notice of motion to dissolve having been addressed to the original bond. Indeed, it is declared by respondent, in his brief, that the attorney for appellants stated in open court that he did not rely upon any objection to the undertaking and that he so stated to the judge of the lower court and to the attorney for respondent upon the settlement of the bill of exceptions, the attorney for the respondent requesting that a statement to that effect be inserted in said bill. It was not so inserted, but it may be said that it does not affirmatively appear that at the hearing of said motion any objection was made to said undertaking, and appellants have not denied nor questioned the accuracy of said statement in respondent's brief.

No sufficient reason has been presented for interfering with the action of the lower court and the order is therefore affirmed.

Chipman, P. J., and Hart, J., concurred.