[Civ. No. 20001. Second Dist., Div. Three. July 26, 1954.]

R. E. BRINGAS et al., Appellants, v. JOHN F. SULLIVAN, Respondent.

Desser, Rau, Christensen & Hoffman and Robert Haves for Appellants.

Ralph R. Benson for Respondent.

VALLÉE, J.—Appeal by plaintiffs from an order granting a motion to discharge an attachment. Plaintiffs had filed a verified complaint for breach of a written contract, and an affidavit for an attachment. The writ was issued and levied. Defendant moved to discharge the attachment. He did not file a counteraffidavit. His motion was made on the ground the attachment was improper under sections 537 and 538 of the Code of Civil Procedure permitting attachment in an action on a contract for the direct payment of money, and based it on the "files, papers and proceedings herein."

The validity of the attachment is to be determined from the verified complaint and the affidavit therefor. (Code Civ. Proc., §§ 537, 538.)

The complaint alleged: Plaintiffs and defendant are residents of the city of Los Angeles. Plaintiffs are copartners doing business under the name of Bringas Bros. Defendant is the owner and operator of a café. On November 20, 1952, the parties entered into a written contract by the terms of which plaintiffs agreed to install and maintain for eight years a coin-operated automatic phonograph machine in defendant's café, and defendant agreed to pay plaintiffs 50 per cent of all moneys deposited in the machine. The contract was made and the moneys are payable in the city of Los Angeles. Plaintiffs have performed all of their obligations under the contract and at all times have been ready, willing, and able to continue that performance.

By the contract defendant agreed that he would not allow any coin-operated automatic phonograph machine other than that of plaintiffs to be placed in his place of business at any time during the term of the contract, and that he would during all business hours keep plaintiffs' machine in operation and available and readily accessible to the patrons of his place of business. Contrary to the terms of the contract, defendant on April 30, 1953, disconnected plaintiffs' machine, moved it to a place on the premises where the patrons would not use it, and installed a similar machine that did not belong to plaintiffs. Plaintiffs demanded that defendant remove the machine which did not belong to them and reinstall their machine; defendant refused and failed to do so.

The contract provided that in the event any of its terms are breached by either party all sums then due or to become due and payable shall immediately become due and payable at the time of the breach. From the time of the execution of the contract to the date of its breach, plaintiffs' share of the earnings of the phonograph machine averaged approximately $14.90 a week. On information and belief, plaintiffs allege that the machine would, during the balance of the term of the contract, earn as plaintiffs' share approximately $14.90 a week. The contract at the date of its breach had 393 weeks to run. The breach has caused plaintiffs to be damaged in the sum of $5,855.70.

The contract also provided that in the event plaintiffs are required to commence any action to enforce any of its terms or provisions, defendant shall pay to plaintiffs all costs and expenses so incurred, including reasonable attorney's fees to be fixed by the court. Plaintiffs employed a law firm for that purpose; and $500 is a reasonable attorneys' fee to be fixed by the court.

A copy of the contract was attached to the complaint and incorporated therein by reference.

Plaintiffs prayed for judgment in the sum of $5,855.70 with interest from the date of breach, attorneys' fees in the amount of $500, costs, and general relief.

The affidavit for the attachment states that defendant is indebted to plaintiffs in the sum of $5,855.70, plus interest from April 30, 1953, over and above all legal setoffs and counterclaims, on the express contract of November 20, 1952, for the direct payment of money, and costs of suit; the contract was made and is payable in this state; the contract was not secured; and the attachment is not sought or the action prosecuted to defraud or otherwise injure defendant's creditors.

Plaintiffs contend the motion should have been denied because the attachment was issued in an action upon a contract for the direct payment of money. Defendant argues: 1. Under the contract defendant was not required to make any direct payment of money to plaintiffs. Plaintiffs had control of the phonograph machine and they were required to pay defendant 50 per cent of all the moneys deposited in the machine. 2. Plaintiffs did not allege any damages whatsoever. 3. The loss of profits by plaintiffs is too uncertain, unclear, and not easily computable, to justify an attachment; the estimation of the profits would require a double process

of estimation: first, it would be necessary to estimate what the average "take" would be in the future, and second, it would be necessary to estimate what the net profit would be in the future.

Section 537 of the Code of Civil Procedure provides: "The plaintiff, at the time of issuing the summons, or at any time afterward, may have the property of the defendant attached, as security for the satisfaction of any judgment that may be recovered, . . . in the following cases: 1. In an action upon a contract, express or implied, for the direct payment of money, where the contract is made or is payable in this State," and it is not secured. Section 538 requires the writ to be issued if the affidavit shows sufficient facts under section 537, states the amount of the indebtedness and that the attachment and action are not aimed at hindering, delaying, or defrauding any creditor of defendant.

The party invoking the remedy of attachment must stand in the position of a creditor to the person against whom it is invoked. (5 Cal.Jur.2d 600, § 6.) As a rule any person standing in the position of a creditor and having a claim satisfying the requirements of section 537 of the Code of Civil Procedure may invoke the remedy of attachment. (*Mayer* v. *Northwood Textile Mills,* 105 Cal.App.2d 406, 410 [233 P.2d 567].) All that is required is that the action be based on a contract calling for the payment of money. The word "direct" as used in section 537 of the Code of Civil Procedure is surplusage, for every contract for the payment of money would be a contract for the direct payment of money. (*McCall* v. *Superior Court,* 1 Cal.2d 527, 539 [36 P.2d 642, 95 A.L.R. 1019]; *Redwood Fibre etc. Co.* v. *Miller Mfg. Co.,* 61 Cal.App.2d 505, 510 [143 P.2d 389].) Direct has been defined as meaning an amount ascertainable with reasonable certainty (*Hathaway* v. *Davis,* 33 Cal. 161, 167-168; *Dunn* v. *Mackey,* 80 Cal. 104, 107-110 [22 P. 64].) The essential and material allegation is that the money sued on is due on a contract. (*Simpson* v. *McCarty,* 78 Cal. 175, 179 [20 P. 406, 12 Am.St.Rep. 37]; *Hale Bros.* v. *Milliken,* 142 Cal. 134, 138 [75 P. 653].)

The contract provides that plaintiffs were to open the phonograph machine at least once every two weeks during its term and pay defendant 50 per cent of all moneys which were deposited in the phonograph; provided, however, that if the total amount of the money deposited in the phonograph during any two-week period did not exceed $6.00, then, in that event,

defendant was not to be entitled to any portion of the moneys deposited for that particular two-week period. The right to open the phonograph machine was designed to prevent plaintiffs from suffering losses that might have arisen from permitting other persons the right of access to the machine's coin box. The contract provides for payment to defendant of 50 per cent of all the proceeds; and, as plaintiffs alleged, it also provides for the payment of the same percentage to plaintiffs. There were only two parties to the contract. After paying defendant 50 per cent of all the moneys, the remaining 50 per cent was to be retained by plaintiffs. The moneys were to be divided equally between the parties, and this was done during the first five months of the term of the contract. The matter of who should open the coin box and divide the moneys should not control the rights of the parties when the over-all intent clearly appears from the contract regarded in its entirety. The contract embodies an express promise on the part of defendant to pay to plaintiffs a sum of money. It states that in the event any of its terms are breached by either party all sums then due or to become due and payable shall immediately become due and payable at the time of the breach. This provision would be meaningless if defendant had undertaken no duty to pay plaintiffs. All of the provisions of the contract must be given effect. (Civ. Code, § 1650.) The contract says "either party." We think it clear that the parties intended moneys to be payable to plaintiffs by defendant—that is, 50 per cent of the gross proceeds. The payment was accomplished by defendant's retaining possession of the machine with the moneys deposited therein, the opening of the machine by plaintiffs, and division of the moneys. The failure of defendant to maintain the machine was manifestly a refusal by defendant to pay plaintiffs moneys that would be deposited therein.

We pass to consideration of the question whether it appears from the contract, the complaint, and the affidavit that the computation of damages is reasonable, definite, and readily ascertainable. (See *Hayward L. & I. Co.* v. *Construction P. Corp.*, 110 Cal.App.2d 386, 387 [243 P.2d 52].) ■ "It is a well-recognized rule of law in this state that an attachment will lie upon a cause of action for damages for a breach of contract where the damages are readily ascertainable by reference to the contract and the basis of the computation of damages appears to be reasonable and definite. [Citations.] ■ The fact that the damages are unliquidated is not de-

terminative. [Citations.] But the contract sued on must furnish a standard by which the amount due may be clearly ascertained and there must exist a basis upon which the damages can be determined by proof. [Citation.] The language of the court in *Greenebaum* v. *Smith,* 51 Cal.App. 692 [197 P. 675, 676], may well be applied to the present case, where it is said at page 694: 'This being an action for damages for the breach of an executory contract, defendant contends that it cannot be held to be an action on a contract for the direct payment of money. True, this is not an action for a debt in a technical sense, nor for a certain sum of money specified in the contract, but it is nevertheless an action for the breach of a contract for the direct payment of money, and merely because the amount is uncertain, consisting of damages to be proven at the trial, is no reason why an attachment may not issue where, as here, such damages are easily ascertainable according to fixed standards supplied by the contract or the law acting upon it.' " (*Force* v. *Hart,* 205 Cal. 670, 673 [272 P. 583].)

In *Peninsula etc. Co.* v. *County of Santa Cruz,* 34 Cal.2d 626 [213 P.2d 489], the court said (p. 631): "The language of section 537 does not suggest that the amount owing must be fixed with absolute certainty, and it has been held that an attachment is proper although the exact amount due is unknown to the attaching party." █ Merely because the amount is uncertain is no reason why an attachment may not issue where such damages are readily ascertainable. █ It is not necessary that the amount for which the defendant may be liable should appear upon the face of the contract by or from which liability is to be determined. It often happens that the amount due under a contract does not appear from the contract itself. (*De Leonis* v. *Etchepare,* 120 Cal. 407, 410 [52 P. 718].) In *Dunn* v. *Mackey,* 80 Cal. 104 [22 P. 64], the court said (p. 107): "Our code does not require that the amount due on the contract shall appear from the contract itself . . . but that the amount of the indebtedness shall be shown by affidavit. . . . Attachment may issue in an action for damages for the breach of a contract. [Citation.] And this, where proof is necessary at the trial to show the amount of damages."

*Dunn* v. *Mackey,* 80 Cal. 104 [22 P. 64], was an action for damages against an agent who had expressly contracted to sell realty within a year for a specified amount. The measure of damages for his breach of the contract was the difference

between the actual value of the land at the end of the year and the amount the agent bound himself to realize from it. The court held that an attachment properly issued in such an action; the fact that the plaintiff must give evidence as to the value of the land does not prevent his invoking an attachment. *MacDonald* v. *Crawford,* 106 Cal.App. 193 [288 P. 1088], is to the same effect. In *Hale Bros.* v. *Milliken,* 142 Cal. 134 [75 P. 653], a three months' delay by the defendant in delivery of structural steel contracted to be delivered by a specified date resulted in delay for a like period in the construction and completion of a building in which the plaintiff was to conduct his business. By reason of such delay one item of damages sought was the reasonable value of the use and occupation of the building during the period of delay. It was held that the claimed damages arose out of the contract and that they were readily ascertainable. In *Force* v. *Hart,* 205 Cal. 670 [272 P. 583], the contract called for the construction by the plaintiff of an apartment house in accordance with certain plans and specifications for an agreed sum. The defendant repudiated the contract and refused to permit the building to be erected. The plaintiff sought as damages the difference between the contract price and the cost of the building to him. The court held that the amount due was capable of definite ascertainment; that the pecuniary value of the contract right taken from the plaintiff could be ascertained at the trial; and that an attachment had properly issued.

In *Hamburger* v. *Helperm,* 28 Cal.App. 317 [152 P. 61], the plaintiffs were employed by contract in March for one year as exclusive selling agents of goods with a commission of 7½ per cent on all sales. The defendant terminated the contract without cause the next August. The plaintiffs sought the loss of estimated commissions. In holding it was error to dissolve an attachment the court said (p. 318): "The action is one arising out of contract, and is to recover, in the form of damages for its breach, the commissions, at a specified percentage, which the plaintiffs would have earned had the contract not been broken." *Lowenberg* v. *L. Jacobson's Sons,* 25 Cal.App. 790 [145 P. 734], is to the same effect. In *Greenebaum* v. *Smith,* 51 Cal.App. 692 [197 P. 675], the defendant had contracted with the plaintiff to deliver to the latter cargo that would fully load his ship and pay him at specified rates per ton for cartage. The defendant did not deliver the cargo and the vessel was compelled to leave port

empty. The measure of damages was the net amount which would have been earned by the vessel under the charter, less the net amount earned, or which might with reasonable diligence have been earned by the vessel during the time required for the performance of the voyage named in the contract of charter. The court held that a motion to discharge an attachment had been properly denied.

Under the contract in *Lewis* v. *Steifel*, 98 Cal.App.2d 648 [220 P.2d 769], the plaintiff was to render services as a motion picture production manager in connection with three motion pictures to be produced by defendants during the year beginning November 1, 1948, and ending November 1, 1949; defendants informed him the production of these pictures would take approximately one year, and that he was to receive for his services the sum of $500 a week; his services were to commence on the day following the formation of the contract and his salary was to accrue from that date but was to be payable at the time defendants went into production of the first of the three pictures. The plaintiff rendered services for the defendants until February 1949, when he was wrongfully discharged. He alleged he had been damaged in the sum of $26,000 because of the breach of the contract by the defendants. It was contended the plaintiff could not truthfully depose that the defendants were indebted to him in the sum of $26,000, and that upon a trial the amount he had earned or could have earned in other employment within the year would be deducted from the maximum amount he could have earned if his contract had been completed.

In holding that the lower court had erred in discharging an attachment this court said (p. 651): "An attaching plaintiff may claim in his affidavit the maximum amount of the alleged liability of the defendant, and the fact that within these limits the claim appears to be exaggerated, does not furnish a ground for discharging the attachment, nor does the fact that there appears to be but slight prospect that plaintiff will recover anything. It cannot be said upon the record before us that the sum of $26,000 for which the writ of attachment issued was excessive."

The allegation that during the five months the machine was in operation plaintiffs' share of the earnings thereon averaged approximately $14.90 a week is a sufficient basis for ascertainment of their future damage. (*Hollywood Cleaning & P. Co.* v. *Hollywood L. Service*, 217 Cal. 131, 134, 136

[17 P.2d 712] ; *Steelduct Co.* v. *Henger-Seltzer Co.*, 26 Cal.2d 634, 651 [160 P.2d 804].)

We hold that the contract sued on furnishes a standard by which the amount due may be clearly ascertained; that there exists a basis on which the damages can be determined by proof; and that it appears by reference to the contract, the complaint, and the affidavit that the computation of damages alleged is reasonable, definite, and readily ascertainable. The court erred in discharging the attachment.

Reversed.

Shinn, P. J., and Wood (Parker), J., concurred.