[Civ. No. 24992.   Second Dist., Div. Two.   Apr. 27, 1961.]

E. I. NOXON CONSTRUCTION COMPANY (a Corporation), Respondent, v. WALLACE PROCESS PIPING COMPANY, INC., OF CALIFORNIA (a Corporation) et al., Appellants.

652

[redacted]

Jerome Weber and Bertram S. Harris for Appellants.

Mitchel & Strange, George C. Mitchel and Edwin W. Green for Respondent.

FOX, P. J.—This is an appeal from an order denying defendants'* motion for an order releasing an attachment. Two questions are involved: (1) Does the superior court have jurisdiction to hear the action; and (2) does the complaint state a cause of action for which an attachment will lie within the meaning of subdivision 1 of section 537 of the Code of Civil Procedure?

The complaint alleges that plaintiff is a general contractor for the United States with reference to a certain construction project known as the G/M Building Number 2, at Vandenberg Air Force Base, Lompoc, California. As general contractor, plaintiff entered into a subcontract agreement with defendant. A portion of the contract is set out in the complaint. Its material terms are as follows: At its own expense defendant was to "furnish all labor, material, equipment and competent supervision incidental thereto, to furnish and install all MECHANICAL work as specified . . . ;" subject to "due performance," plaintiff was to pay $156,400 in the form of monthly payments with a lump sum balance due following completion by defendant and acceptance by plaintiff; ". . . all work done and materials furnished hereunder" were to be "performed and furnished free from any mechanic's lien," and defendant was to "furnish, if required, prior to any . . . further payment of money hereunder, a . . . waiver of lien from every person . . . furnishing labor or materials to [defendant] on account of any work done or materials furnished hereunder";

*Defendants are related corporations and will be hereafter referred to in the singular.

defendant was to "indemnify . . . [plaintiff] from any claim, obligation, or liability arising out of or connected with any mechanic's lien or claim of lien resulting from the work done or materials furnished hereunder, including all expenses and attorney's fees incurred in investigating, resisting, or settling such lien or claim, and in the event any such lien is asserted, or if at any time there shall be evidence of the existence of any claim or lien for which, if established, [plaintiff or its] property would be liable," plaintiff was "given the right to retain out of moneys due or to become due [defendant] an amount sufficient to indemnify [plaintiff] against all possible loss or liability in connection therewith, including expenses and attorney's fees," but the right to retain the moneys was not to be deemed to be an exclusive remedy and was not to "prevent recovery from [defendant] hereunder"; it was further agreed that "if [defendant] shall fail to perform . . . within the time specified or in accordance with the requirements herein stated and to the satisfaction of [plaintiff], then [plaintiff] may, at his election, have said work done and may purchase said materials elsewhere, and [defendant] shall, upon demand, pay any excess in cost of the same over and above the price herein specified, together with any additional expense incurred by [plaintiff] in connection therewith"; in case of default by defendant and action by plaintiff on this contract, it was agreed that defendant would pay reasonable attorney's fees. It is further alleged that plaintiff has duly performed.

Plaintiff alleges as a breach that "on or about March 11, 1960, defendants failed, neglected and refused to complete the work called for . . . in that the air-conditioning system and heating system was not completed in accordance with the plans and specifications therefor. . . ." It is alleged on information and belief that the cost of completion is $3,000, to the damage of plaintiff in that amount. A further breach is alleged in that "the work performed . . . was not . . . furnished free from mechanics' liens or claims of lien, but, on the contrary, numerous persons . . . have asserted [them] against plaintiff . . . in connection with said . . . agreement. At the present time the aggregate amount of liens or claims of lien asserted against plaintiff on account of said . . . agreement is $47,697.55. Plaintiff has retained out of moneys due or to become due to defendants the sum of $27,731.53 to indemnify

plaintiff, in part, against loss or liability in connection with said liens or claims of lien. By reason of the liens and claims of lien . . . less the sums retained by plaintiff, plaintiff has been damaged in the sum of $19,966.02 together with expenses and attorneys' fees incurred on account thereof." Lastly, it is alleged that plaintiff has employed counsel to bring this action and deal with the asserted liens and has thereby incurred the expense of reasonable attorneys' fees in the amount of $5,000.

A writ of attachment was procured by which defendant's bank account was garnished. A motion to release the attachment was denied, and defendant has appealed.

Defendant first asserts that the subject matter of this action is within the terms of the Miller Act, U.S.C.A., title 40, § 270a et seq., which provides that under certain circumstances only the United States may bring an action and that the action must be brought in the United States District Court. Section 270a requires a contractor who is procured by the United States for the purpose of performing any public work for more than $2,000 to furnish a performance bond and a "payment" bond "for the protection of all persons supplying labor and material. . . ." Section 270b provides that unpaid persons who have furnished labor or material on such a contract may sue on the payment bond. It is further provided that such unpaid persons who have contracted with a subcontractor instead of the contractor furnishing the bond shall also have a right of action on the bond. Section 270b(b) requires that "every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court. . . ."

The Miller Act was enacted to replace former section 270, with some procedural modifications. Section 270 was passed in recognition of the inability of contractors for labor and material to take liens upon public property of the United States (*United States* v. *Ansonia Brass & Copper Co.*, 218 U.S. 452 [31 S.Ct. 49, 54 L.Ed. 1107]), and it was enacted for their protection. (*Watsabaugh Co.* v. *Seaboard Surety Co.*, 106 F.2d 355; *United States* v. *Stannard*, 206 F. 326.) The essence of the policy of this act is to provide a surety who must make good the obligations of a defaulting contractor to his suppliers of labor and material. (*United States for Benefit on Behalf of Sherman* v. *Carter*, 353 U.S. 210 [77 S.Ct. 793,

1 L.Ed.2d 776].) This is not an action by a subcontractor, who furnished labor and materials, to recover on the payment bond. It is an action by the primary contractor against a subcontractor for breach of contract. Nowhere in the language of the act can reference to such an action be found. Defendant's argument is somewhat tenebrous; but it appears to be that since one item of damages is alleged to arise out of liens asserted against plaintiff because of defendant's default, and since liens asserted against plaintiff are contemplated by sections 270a et seq. (although in a wholly different sense), these sections must apply. The mere statement of this argument dictates its disposition. While it is true that the act refers to people who would have liens under state law, the above cited cases make it clear it was enacted to provide *them* with a means of recovery upon default of the primary contractor, and not to deprive the contractor of his normal state remedies against a defaulting subcontractor.

█ It is also argued that the complaint does not state facts upon which an attachment will issue. Section 537, subdivision 1, of the Code of Civil Procedure, provides that the plaintiff may have the property of the defendant attached in an action upon a contract for the direct payment of money. The word "direct" has been held to be surplusage, for the reason that any contract for the payment of money is for the "direct" payment of money. (*Bringas* v. *Sullivan,* 126 Cal. App.2d 693 [273 P.2d 336] ; *Redwood Fibre Products Co.* v. *Miller Mfg. Co.,* 61 Cal.App.2d 505 [143 P.2d 389].) This is an action on a contract for the payment of money in that defendant promised to pay money to plaintiff in the event of specified breaches. But to the extent that it is an action for damages for breach of contract, it is well established that an attachment will lie in such an action if "the damages are readily ascertainable by reference to the contract and the basis of the computation of damages appears to be reasonable and definite." (*Force* v. *Hart,* 205 Cal. 670, 673 [272 P. 583] ; 5 Cal.Jur.2d, § 22.) The damages need not be liquidated. It is only necessary that the contract furnish the measure of the liability. (1 Witkin, California Procedure, § 51.) In *Force* v. *Hart, supra,* the contract called for the construction of an apartment house in accordance with certain plans, for an agreed sum. Plaintiff was to construct the building. Defendant repudiated the contract and plaintiff sued for the difference between his costs and the contract price.

It was held that an attachment would be proper since the cost of labor and materials were capable of definite ascertainment at the trial. It was stated that the fact that the damages were unliquidated was not determinative. (205 Cal. at p. 673.) To the same effect, see *Dunn* v. *Mackey,* 80 Cal. 104 [22 P. 64]; *Redwood Fibre Products Co.* v. *Miller Mfg. Co., supra,* and *Eaton* v. *Queen,* 78 Cal.App.2d 571 [177 P.2d 997] (actions for damages for breach of express warranty in the sale of goods).

In *Bringas* v. *Sullivan, supra,* defendant was to keep the plaintiffs' juke box in his café. The profits were to be split between plaintiffs and defendant. The duration of the agreement was eight years. After five months of operation, defendant breached. Plaintiffs alleged damages based upon the average of past weekly earnings of the machine and the assumption that such an average would continue. Defendant asserted that the damages were too uncertain, unclear, and difficult of computation to justify an attachment. After reviewing many cases in which the amount of damages had to be proven at the trial, at page 699, the opinion quotes *Greenebaum* v. *Smith,* 51 Cal.App. 692, 694 [197 P. 675]: "This being an action for damages for the breach of an executory contract defendant contends that it cannot be held to be an action on a contract for the direct payment of money. True, this is not an action for a debt in a technical sense, nor for a certain sum of money specified in the contract, but it is nevertheless an action for the breach of a contract for the direct payment of money, and merely because the amount is uncertain, consisting of damages to be proven at the trial, is no reason why an attachment may not issue where, as here, such damages are easily ascertainable according to fixed standards supplied by the contract or the law acting upon it." It was held that the five-month average was a sufficient basis for the ascertainment of future damages and that an attachment might issue.

Although the line which divides the cases in which an attachment will or will not lie is obviously difficult to draw with certainty, at least one breach alleged herein falls well within the limits expressed by the above-cited cases. With respect to the alleged failure to complete the work, the contract provides that in the event of defendant's default, plaintiff may have it done, and defendant must pay the excess in cost above the contract price, together with any additional

expenses. The "basis of computation of damages appears to be reasonable and definite" (*Force* v. *Hart, supra,* p. 673) in that plaintiff need only introduce evidence as to his total costs on the project, considering what he must pay to have the work done, and subtract the contract price from that figure. Since this claim provides a basis for attachment there is no need to consider the others, because the motion denied by the trial court sought to set aside the attachment in its entirety.

Defendant argues that it appears from the complaint that, pursuant to the contract, plaintiff has retained $27,731.53 out of moneys due or to become due to defendant, to indemnify it against loss because of the asserted liens, and that this fund constitutes a security sufficient to bar an attachment within the terms of section 537, subdivision 1. That section provides that an attachment may issue in an action upon a contract for the direct payment of money when the contract is not secured by any *mortgage, deed of trust or lien* upon real or personal property, or any *pledge* of personal property. It will be noted that the statute specifies the forms of security which will bar attachment. While it is true that the writ has been denied in installment sales of real property where title is retained as security (*Lencioni* v. *Dan,* 128 Cal.App.2d 105 [275 P.2d 101]), the statute has otherwise been strictly construed, so that an attachment would lie although the obligation sued upon was secured by means other than those enumerated. Thus one who has reserved title pursuant to a conditional sales contract may attach in an action for the price. (*Standard Auto Sales Co.* v. *Lehman,* 43 Cal.App. 763 [186 P. 178]; *Hougham* v. *Rowland,* 33 Cal.App.2d 11, 17 [90 P.2d 860].) A provision in a lease prohibiting lessee from removing his barber shop fixtures unless the rent was paid in full was held not within the terms of section 537, subdivision 1. (*D'Allessandro* v. *Pickford,* 22 Cal.App.2d 239 [70 P.2d 646].) In an action for unlawful detainer, it was held that a deposit of $2,700, made for the purpose of securing performance of the lessee, did not bar attachment. (*Garfinkle* v. *Montgomery,* 113 Cal.App.2d 149, 156 [248 P.2d 52]. See also *Lori, Ltd., Inc.* v. *Wolfe,* 80 Cal.App.2d 557 [180 P.2d 21].) The opinion in the Garfinkle case quoted *Hougham* v. *Rowland, supra* (pp. 14, 17): "In determining this question, it is important to notice carefully the precise terms used in the statute. The law does not provide that no attachment shall issue where the plaintiff has other security for the claim, but it designates

the specific kinds of security that will bar the remedy, namely, a mortgage, deed of trust, a lien, or a pledge of the property....
"If we are, therefore, to be guided by the plain meaning of the statute, it would follow that appellant was entitled to the writ of attachment. The only ground upon which this conclusion could be avoided would be that the statute contemplates other security as well as those which are specifically mentioned. We think the statute having specified the four particular kinds of securities, to wit, mortgage, trust deed, lien and pledge, by implication there would be excluded any other species."

In the light of these authorities we must hold that the money "retained" by plaintiff does not constitute a security contemplated by section 537.

The order is affirmed.

Ashburn, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 21, 1961.