HERNDON, J.
 

 Plaintiff appeals from an order entered on March 2, 1961, granting defendants’ motion to dissolve a writ of attachment.
 

 Plaintiff was engaged in the business of leasing coin-operated music, amusement and cigarette machines to the owners
 
 *28
 
 and operators of restaurants and taverns upon a percentage and commission basis. Plaintiff alleges that defendants Melvin W. Phillips, Elizabeth Phillips, Clyde A. Phillips and Carmella Phillips were “the agents and associates of one another, and they in concert maintained and operated a business under the fictitious name and style of Phil’s Tap Room, sometimes also known as Bar-B-Que Cafe, at 4950 Main Street, Baldwin Park, California.”
 

 On July 17, 1958, plaintiff, as lessor, and defendants Melvin and Elizabeth Phillips, as lessees, entered into a lease by the terms of which lessor loaned to lessees the sum of $700 and leased to lessees certain described property to be installed in lessees’ described premises. The lease begins with a recital that in consideration of said loan
 
 “and in consideration of the rental of the equipment hereinafter referred to,
 
 the parties agree as follows: ...” (Emphasis added.) The term of the lease is four years, ending on July 17, 1962.
 

 Paragraph eleven of the lease provides that “the rental” shall be computed on “the gross income of the equipment,” to be divided in the following manner: (1) the gross income from the amusement machines is to be divided equally between the parties; (2) as to the cigarette machines, lessees shall retain out of the gross receipts a commission of 2 cents per package sold, the remainder of the gross income to go to lessor as rental; and (3) as to the gross receipts from the phonograph equipment, a minimum weekly rental of $15 per week shall be paid to lessor, the second $15 to lessees, and any excess over $30 per week to be divided equally between the parties.
 

 Other provisions include the following: “6. In the event that the business operated at the above address is sold, transferred, assigned or discontinued for any reason, Lessee agrees at once to reimburse Lessor in the full amount of the then balance of the above loan. Lessor’s right to reimbursement is in addition to its right to fulfillment of this agreement as otherwise stated. 9. This agreement shall be binding upon and transferable to the parties’ respective heirs, successors and assigns. 10. In the event legal action shall be instituted by the Lessor to enforce the terms and conditions contained herein, then and in that event Lessee or his successors in interest agree to pay reasonable attorney’s fees.”
 

 A true copy of the lease is annexed as an exhibit to plaintiff’s amended complaint and by reference is incorporated therein. Said complaint alleges, in substance, that under the
 
 *29
 
 terms of the lease " the said agreement would he binding upon the parties’ respective heirs, successors, and assigns, and that the lessor’s right to fulfillment of the agreement would not be terminated by sale, transfer, assignment or discontinuance of the aforesaid business ’’ and that said defendants " did further promise and agree that in the event of sale or transfer of the said business, the said defendants would secure the acceptance of the terms and conditions of the said agreement by their assignees or successors in interest.”
 

 It is further alleged: (1) that at all times mentioned in the complaint the named defendants “each had full power and authority to act on behalf of, and bind by his actions, each other said defendant, and the business, as to all acts mentioned in this pleading . . (2) that “on or about the 1st day of November, 1960, the said defendants entered into an agreement to transfer and convey the said business to the defendants, Clyde A. Phillips, and Camella Phillips . . ; (3) that “at the time of said agreement of sale, the said Clyde A. Phillips and Camella Phillips . . . were advised of the terms and conditions of the aforesaid agreement (Exhibit ‘A’) with plaintiff, and that the said agreement was assigned to them”; (4) that “plaintiff expended the approximate sum of $2,100.00 for coin equipment and licenses and taxes for said equipment, in preparing to render performance under said agreement, and the salvage value of said equipment is approximately $1000.00.”
 

 Plaintiff alleges that on January 1, 1961, defendants breached and repudiated the lease and demanded the removal of plaintiff’s coin-operated equipment from defendants’ premises. Prior to January 1, 1961, plaintiff had been realizing profits under the lease in the approximate amount of $182.50 per month. On the date when the agreement was repudiated, the lease still had approximately eighteen and one-half months remaining to be performed. Plaintiff alleges that by reason of the aforesaid breach of the contract, he has been damaged in the amount of $3,500, which sum represents the reasonable expectation of the profits which plaintiff would have realized under the lease during the remainder of its term.
 

 In moving that the attachment be dissolved, defendants contended that the action was not brought upon a contract for the direct payment of money as required by Code of Civil Procedure, section 537, and that the damages were unliquidated and too uncertain, unclear and difficult of computation
 
 *30
 
 to justify an attachment. Defendants’ motion was granted and this appeal followed.
 

 Respondents’ brief submits, as the basic and decisive issue in this case, the question whether or not the contract herein sued upon is a contract for the direct payment of money as required by section 537 of the Code of Civil Procedure. We agree that this is the decisive issue, but we have concluded that appellant is correct in contending that said question must be answered in the
 
 affirmative,
 
 and that the court below erred in dissolving the attachment.
 

 Bringas
 
 v.
 
 Sullivan,
 
 126 Cal.App.2d 693 [273 P.2d 336], is a ease involving a factual situation strikingly similar to that presented in the ease at bar. In the cited ease, the defendant was the owner and operator of a café. Plaintiffs were the owners of a coin-operated automatic phonograph machine. The parties entered into a written contract by the terms of which plaintiffs agreed to install and maintain the phonograph in defendant’s café for a period of eight years, and defendant agreed to pay plaintiffs 50 per cent of all monies deposited in the machine.
 

 After five months of operation, defendant breached the contract, disconnected plaintiffs’ machine and moved it to a place on the premises where the patrons would no longer use it. Plaintiffs filed an action for damages alleging in substance: that from the time of the execution of the contract to the date of its breach, plaintiffs’ share of the earnings of the phonograph machine averaged approximately $14.90 per week; that the machine would, during the period of the term of the contract, earn as plaintiffs’ share approximately $14.90 per
 
 week;
 
 that the contract at the date of its breach had 393 weeks to run, and that the breach caused plaintiffs to be damaged in the sum of $5,855.70. A copy of the contract was attached to the complaint and incorporated therein by reference.
 

 Plaintiffs filed an affidavit in the usual form for the issuance of a writ of attachment. After the writ had been issued, defendant moved that it be discharged, contending that the damages were too uncertain, unclear and difficult of computation as to justify an attachment. Plaintiffs contended that the motion should be denied because the attachment was issued in an action upon a contract for the direct payment of money, and that the amount of damages could be computed with sufficient certainty by applying the formula specified in the lease, and by proof of the facts showing the average amount of the weekly profits to which plaintiffs became en
 
 *31
 
 titled during the five months of performance under the contract.
 

 The trial court granted the motion to discharge the attachment and plaintiffs appeal. In
 
 reversing
 
 the order, Division Three of this court declared, at page 697: “As a rule any person standing in the position of a creditor and having a claim satisfying the requirements of section 537 of the Code of Civil Procedure may invoke the remedy of attachment.
 
 (Mayer
 
 v.
 
 Northwood Textile Mills, Inc.,
 
 105 Cal.App.2d 406, 410 [233 P.2d 657].) All that is required is that the action be based on a contract calling for the payment of money. The word ‘direct’ as used in section 537 of the Code of Civil Procedure is surplusage, for every contract for the payment of money would be a contract for the direct payment of money.
 
 (McCall
 
 v.
 
 Superior Court,
 
 1 Cal.2d 527, 539 [36 P.2d 642, 95 A.L.R. 1019];
 
 Redwood Fibre etc. Co.
 
 v.
 
 Miller Mfg. Co.,
 
 61 Cal.App.2d 505, 510 [143 P.2d 389].) Direct has been defined as meaning an amount ascertainable with reasonable certainty
 
 (Hathaway
 
 v.
 
 Davis,
 
 33 Cal. 161, 167-168;
 
 Dunn
 
 v.
 
 Mackey,
 
 80 Cal. 104, 107-110 [22 P. 64].) The essential and material allegation is that the money sued on is due on a contract.
 
 (Simpson
 
 v.
 
 McCarty,
 
 78 Cal. 175, 179 [20 P. 406, 12 Am.St.Rep. 37] ;
 
 Hale Bros.
 
 v.
 
 Milliken,
 
 142 Cal. 134, 138 [75 P. 653].)”
 

 The
 
 Bringas
 
 decision further states at page 699: “Merely because the amount is uncertain is no reason why an attachment may not issue where such damages are readily ascertainable. It is not necessary that the amount for which the defendant may be liable should appear upon the face of the contract by or from which liability is to be determined. It often happens that the amount due under a contract does not appear from the contract itself.
 
 (De Leonis
 
 v.
 
 Etchepare.,
 
 120 Cal. 407, 410 [52 P. 718].)”
 

 In
 
 E. I. Noxon Construction Co.
 
 v.
 
 Wallace Process Piping Co.,
 
 191 Cal.App.2d 651 [13 Cal.Rptr. 26], this court, in
 
 affirming
 
 an order
 
 denying
 
 a motion to dissolve an attachment, cited
 
 Bringas
 
 v.
 
 Sullivan, supra,
 
 with approval and quoted similar language from
 
 Greenebaum
 
 v.
 
 Smith, 51
 
 Cal.App. 692, 694 [197 P. 675]. (To the same effect see:
 
 Rose
 
 v.
 
 Pearman,
 
 163 Cal.App.2d 480, 483 [329 P.2d 501]; and
 
 Rapaport
 
 v.
 
 Hoberg,
 
 198 Cal.App.2d 478, 481 [18 Cal.Rptr. 137].)
 

 A motion to discharge an attachment on the ground that the complaint does not state a cause of action may be
 
 *32
 
 granted only if the complaint shows on its face that the pleader has no cause of action and that the defect cannot be cured by amendment.
 
 (Peninsula etc. Co.
 
 v.
 
 County of Santa Cruz,
 
 34 Cal.2d 626, 629 [213 P.2d 489].) A motion to dissolve an attachment will not serve as a demurrer where any defects in the allegations of the complaint can be supplied by amendment.
 
 (Force
 
 v.
 
 Hart,
 
 205 Cal. 670-672 [272 P. 583];
 
 Yosemite etc. Assn.
 
 v.
 
 Case-Swayne Co.,
 
 73 Cal.App.2d 806, 810 [167 P.2d 541].)
 

 We find respondents’ arguments wholly unconvincing. To assert that the lease herein sued upon does not express the promise of the lessees to pay the lessor the rentals prescribed by paragraph eleven is absurd; it is to reject the only reasonable and common sense interpretation of the document. We have seen that said paragraph of the contract provides a clear and definite formula for the computation of the rentals and the recoverable damages. When breached, the contract had been performed for nearly two and one-half years, and plaintiff had been realizing profits of approximately $182.50 per month.
 

 As to defendants Clyde and Carmella Phillips, the complaint alleges that all of the defendants were the “agents and associates of one another, and they in concert maintained and operated’’ the business. This allegation is sufficient to state a cause of action against these defendants, as joint venturers. It is also alleged that the equipment lease was assigned to them when they took over the business on November 1, 1960, at which time they were advised and informed of its terms, and that the lease was repudiated and breached on January 1, 1961. It thus appears from the complaint that they had the benefit of the lease for two months before repudiation.
 

 The general rule is that the mere assignment of rights under an executory contract does not cast upon the assignee any of the personal liabilities imposed by the contract upon the assignor.
 
 (Griffin
 
 v.
 
 Williamson,
 
 137 Cal.App.2d 308, 315 [290 P.2d 361].) Whether an assignee has assumed the obligations of the contract is to be determined by the intent of the parties and may be implied from acceptance of benefits under the contract. (Civ. Code, § 1589;
 
 Weidner
 
 v.
 
 Zieglar,
 
 218 Cal. 345, 350 [23 P.2d 515].) It has been held that where an assignee takes over a going business, his intention to assume the obligations of a contract relating to the business may be found from his acquiescence
 
 *33
 
 in the terms of the contract.
 
 (Gregers
 
 v.
 
 Peterson Ice Cream Co., Inc.,
 
 158 Cal.App.2d 746, 751 [323 P.2d 572].)
 

 Accordingly, the motion to discharge the attachment could not properly have been granted on the ground that the complaint stated no cause of action against these defendants. Inasmuch as the assignor remains secondarily liable as a surety or guarantor if the assignee is found to have assumed the obligation (Civ. Code, § 1457;
 
 Cutting Packing Co.
 
 v.
 
 Packers’ Exch.,
 
 86 Cal. 574, 576 [25 P. 52, 21 Am.St.Rep. 63, 10 L.R.A. 369];
 
 Fenn
 
 v.
 
 Pickwick Corp.,
 
 117 Cal.App. 236, 242 [4 P.2d 215]), the attachment as against the other defendants is not inconsistent.
 

 In the instant case the verified amended complaint and the affidavit for the issuance of the writ are consistent in their allegations, showing: (1) that the action is founded upon an express contract for the direct payment of money; (2) that the contract was made and is payable in this state; (3) that the defendants breached the contract; (4) that the contract provides a basis for the computation of the damages alleged, which is reasonable, definite and readily ascertainable; and (5) that the claim is unsecured. Thus, plaintiffs’ right to the issuance of the writ under the provisions of section 537, subdivision 1 of the Code of Civil Procedure is unassailable.
 

 The order is reversed.
 

 Fox, P. J., and Ashburn, J., concurred.