CLARENCE E. MORRIS, INC., A CALIFORNIA CORPORATION, APPELLANT, v. ALVIN J. VITEK, RESPONDENT.

No. 4741

September 30, 1964                     395 P.2d 521

*Stanley W. Pierce* and *Don L. Griffith,* of Las Vegas, for Appellant.

*Jones, Wiener & Jones,* of Las Vegas, for Respondent.

## OPINION

By the Court, BADT, C. J.:

This is an appeal from an order denying a motion to discharge a writ of attachment.

The affidavit for the writ of attachment stated that the defendant, appellant herein, was indebted to plaintiff in the sum of $511,811 "upon an express contract for the direct payment of money, to wit: $511,811." Such affidavit followed the wording of NRS 31.010 providing for the issuance of the writ: "(1) In an action upon a judgment or upon a contract, express or implied, for the direct payment of money * * *." The complaint was in two counts, the first being for $117,611 and the second for $394,200, based upon a memorandum attached as exhibit A which recited the association of the parties in land developments and housing subdivision construction on five tracts in Chula Vista, a tract in Escondido, a tract in Ocean Side, a tract in National City, and two tracts in Santa Maria, all in the State of California. As to the first nine tracts it was recited: "With reference to said tracts, it is understood that the relation of the parties was one of employer (Morris) and employee (Vitek), with Vitek receiving a salary, plus 3% of the net profits from said enterprise.

"It is understood that Vitek has received all salary commitments but has not received, and still has coming, 3% of profits. It is further understood that said profits may be in the form of cash or in the form of second trust deeds. It is agreed that as soon as profits can be ascertained and/or trust deeds divided, Vitek will receive his percentage compensation as above outlined."

As to the two tracts in Santa Maria, California, it was recited: "The agreement between the undersigned parties with reference to the Donovan Park units [Santa Maria] is that all net profits from the venture, whether in the form of trust deeds or money, will be divided equally between Morris and Vitek.

"It is understood that Vitek shall be entitled to receive, and shall receive, one half of all trust deeds taken as profits, such trust deeds to be assigned to and delivered to Vitek as soon as they are available."

With reference to the two tracts in Las Vegas, Nevada, consisting of approximately 114 houses, it is recited: "With reference to Greater Las Vegas, the understanding is that Vitek is employed by Morris at his regular salary and, in addition, is to receive 3% of said profits." It is first to be observed that as to all of the California tracts, Vitek was to be paid to the extent mentioned, in the form of cash or in the form of second trust deeds, but that with reference to the two Las Vegas tracts, he was to receive his regular salary and in addition 3 percent of net profits.

No question is raised as to payment of Vitek's salary. Apparently that has all been paid as agreed.

The court below, in denying the motion to set aside the attachment, appears to have held in its oral decision from the bench that because the affidavit for attachment recited that the action was based on a contract for the direct payment of money, this satisfied the statute because "if the contract spells out a formula whereby it can be implied and determined that a sum certain is due the plaintiff, that is sufficient to meet the requisite of subparagraph 1 [of NRS 31.010]." This is entirely understandable with reference to the two Las Vegas tracts under which Vitek "is employed by Morris at his

regular salary and, in addition, is to receive 3% of net profits." Appellant does not appear to contend that the net profits on the Las Vegas project were not subject to simple computation.

Our conclusion is that on the other projects in which Vitek's share was payable in cash or in second deeds of trust, there was not a contract for the direct payment of money. Here respondent mistakes the issue and contends that if the damages resulting from a breach of the contract can be ascertained, the issuance of the writ is justified. However, the ascertainment of the amount of damage is only part of the issue. It does not answer the question whether the contract was one for the direct payment of money. If the validity of the attachment depends only upon the question of whether the damages can be computed or ascertained, an attachment would lie for the breach of any kind of a contract, but such is not the effect of the statute. In the language of Willett & Burr v. Alpert, 181 Cal. 652, 185 P. 976, "[t]o hold otherwise would be simply to wipe out the statute and permit an attachment in every action for damages for a breach of contract, regardless of whether or not the contract be one for the direct payment of money." Accord: California Packing Corp. v. Kato, 45 Cal.App. 491, 188 P. 57. Appellant says in his opening brief:

"It is submitted that the parties contemplated reaping their profits, if any, on the ventures in one of three ways: 1. By receiving the full amount of the purchase price of the homes constructed in money, 2. by taking trust deeds in lieu of money, or 3 by a partial payment in cash and the remainder by way of a second trust deed."

This may possibly be so, but there is nothing in the contract or in the record to support it. It would appear more likely that the purchaser of each house borrowed enough money from a lending agency to pay part of the contract price and gave Morris a second mortgage for the remainder, and that in this second mortgage or deed of trust Vitek was to share.

We have no difficulty in construing the contract as

giving Morris an option to pay the agreed percentage of profits either in money or in second trust deeds. Second trust deeds are not money, nor are they the equivalent in value of money. The value of second trust deeds depends upon many features; among other things, the value of the property, the amount of the first trust deed, and the status of the first trust deed. A foreclosure (or a sale under the powers) of the first trust deed could entirely destroy the value of the second trust deed. Accordingly, the option to Morris to pay in second deeds of trust whose value is not determinable as equivalent to cash does not satisfy the statute.

But this conclusion leaves us with an additional issue to dispose of. We have seen that the contract concerning the two Nevada tracts was simply that Morris was to pay Vitek his regular salary (the payment of which is not in dispute) plus 3 percent of the net profits. This was subject to a simple computation and satisfied the requirements of NRS 31.010. But the attachment was for $511,811, which was the amount alleged to be due as Vitek's share of the profits by reason of the construction of the 10 California tracts and the two Nevada tracts. It is impossible to ascertain from the second amended complaint or from the affidavit of attachment how much of this resulted from the Nevada construction. The two Nevada tracts (under which Vitek was to get 3 percent of the profits) were grouped with all of the eight 3 percent California tracts in the first cause of action. The second cause of action was based upon the two Santa Maria tracts (the Donovan Park units) for 50 percent of the profits. Why the pleader grouped them this way is difficult to determine, other than to simplify his arithmetic: 3 percent of the profits in one group in the first cause of action and 50 percent on the two Santa Maria tracts in the second cause of action. The nearest conclusion that can be reached is that the two Nevada tracts plus eight California tracts, all joined in the first cause of action, constitute the total demand of $117,611 on the first cause of action, and $394,200 on the second cause of action, making the total of $511,811,

the amount for which the writ issued. Yet, if we assume (which we of course cannot) that the tracts are of approximately the same size, the two Nevada tracts, the only ones that support a writ of attachment, support two-tenths of the first cause of action, thus justifying a levy to the extent of not more than $23,522, as against the actual levy of $511,811.

With this picture in mind, we directed counsel's attention to a comparatively recent case (1960) not cited in any of the briefs which appeared directly in point, namely, Allen v. Merchants Electric Co., 54 Cal.2d 67, 4 Cal.Rptr. 527, 351 P.2d 799. We instructed counsel to file independent briefs commenting upon this case. The California case was on all fours under the facts. The plaintiff had caused a writ of attachment to be issued based on four causes of action which were set out. The court held that three of these causes of action were not based upon a contract, express or implied, for the direct payment of money, but that the remaining cause of action was based on such a contract. However, the good cause of action was for the sum of $1,500 while the levy, based on all four causes of action, was for an aggregate of $25,785. The court then said: "Even if we assume that plaintiff could properly have attached for the sum claimed in count three, it does not follow that the court erred in discharging the writ. It has been held that if the amount of the indebtedness stated in the attachment affidavit is much larger that the amount for which the remedy would lie and the writ is issued for the greater sum, the attachment must be discharged. Doud v. Jackson, 102 Cal.App. 213, 220–221, 283 P. 107; Ralphs v. Bruns, 22 Cal.App. 153, 155, 133 P. 997; see Kennedy v. California Sav. Bank, 97 Cal. 93, 98–99, 31 P. 846. Here plaintiff sought and obtained an attachment for $25,758, and the demand in count three was for only $1,500."

In respondent's supplemental brief it is contended that the foregoing quotation is mere dictum and that the case supports the order of the district court denying the motion in this case to discharge the attachment. We are satisfied, however, that the quotation is in support of its

main holding and is well supported in the law by the authorities cited.

Respondent insists further that the issue of an excessive levy was not raised below and therefore, under the consistent holdings of this court, it may not be raised for the first time on appeal. We think that respondent misconstrues the issues as presented. Respondent successfully argued to the court below that the payment in money or second deeds of trust satisfied the demands of the statute to the effect that it must be based upon a contract, express or implied, for the direct payment of money, and argued the same contention to this court. When it appeared from the oral argument that this court was inclined toward appellant's view that such was not the case, counsel then argued that as the contract based upon the two Nevada tracts was for the direct payment of money, namely, a flat 3 percent of the profit, a sum subject to simple computation, this in turn would support the entire attachment levy. This inexorably thrust upon this court the necessity of holding whether such argument should or should not prevail. Allen v. Merchants Electric Co., supra, is the complete answer to that question.

The court below was in error in denying appellant's motion to discharge the attachment, and such order must be reversed with costs.

It is so ordered.

McNAMEE and THOMPSON, JJ., concur.